## REX PETROLEUM CO. v. BLACK PANTHER OIL & GAS CO. et al.

No. 8200—Opinion Filed July 24, 1917.

(166 Pac. 1083.)

**Evidence—Parol Evidence Rule—Documentary Evidence.**

Where an oral contract is sued upon, and a written contract is attached to the petition as an exhibit, which the plaintiff alleges was made and entered into as a part of the oral contract, and for the purpose of carrying out the oral contract, and no other, held, that such petition is not subject to demurrer on the ground that the oral contract declared upon attempts to vary the terms of a written contract.

(Syllabus by West, C.)

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by the Rex Petroleum Company, a corporation, against the Black Panther Oil & Gas Company, a corporation, and another. There was judgment for defendants, and plaintiff brings error. Reversed and remanded.

Mathews & Oursler, for plaintiff in error.

Stuart, Cruce & Cruce, for defendants in error.

Opinion by WEST, C. This is an action commenced in the district court of Oklahoma county on November 2, 1916, by plaintiff in error, Rex Petroleum Company, who will hereinafter be referred to as plaintiff, against the Black Panther Oil & Gas Company, a corporation, and Howard Webber, defendants in error, who will hereinafter be referred to as defendants, to recover $1,000, which plaintiff claimed that the defendants owed as a commission upon the sale of 1,000,000 barrels of oil at 40 cents per barrel. Two paragraphs of plaintiff's petition are as follows:

"Plaintiff further states that on or about the 21st day of September, 1914, it entered into an oral agreement by and through its duly authorized officers, James A. Mascho, president, and E. A. Hawley, secretary, with the defendants above nam-

ed, the defendant the Black Panther Oil & Gas Company contracting through and by its board of directors, whose names and addresses are to the plaintiff unknown, whereby the said defendants agreed to pay the plaintiff a commission of one thousand dollars ($1,000) if it should sell for said defendants one million barrels of oil at forty cents per barrel, to be delivered at a rate of not to exceed (20,000) twenty thousand barrels per day.

"Plaintiff further states that it was agreed by said oral agreement that, in order to facilitate the sale of said oil, the (plaintiff and) defendants should enter into a written contract with the plaintiff herein as party of the second part, and the defendants herein named as parties of the first part, whereby the party of the second part should purchase of said parties of first part said million barrels of oil, and that the plaintiffs should then assign said contract of purchase to some purchaser for said oil, and that on the same day the plaintiff and defendants made, executed, and delivered a contract, signed in triplicate, for the purpose (purchase) of said oil, and that in pursuance of said oral agreement the plaintiff executed an assignment of said contract of purchase to one R. S. Ayers, of Shreveport, La., and that by reason of said assignment the said Ayers became the purchaser from the defendants of said oil, a true and correct copy of which said contract and assignment is hereto attached and made a part hereof and for identification is marked 'Exhibit A.'"

Exhibit A, referred to in plaintiff's petition, appears to be a complete contract made between plaintiff and defendants, wherein defendants sold plaintiff 1,000,000 barrels of oil at 40 cents per barrel, under certain conditions expressed in said contract of sale, which contract is too lengthy to incorporate here. At the bottom of said contract appears the following:

"Assignment.

"For and in consideration of the sum of one dollar and other valuable considerations, the receipt of which is hereby acknowledged, the Rex Petroleum Company, second party to the above contract, hereby sells, assigns, and transfers the above contract to R. S. Ayers, of Shreveport, La. In witness whereof, the Rex Petroleum Company has caused this assignment to be executed by Jas. A. Mascho, its president, and its corporate seal hereto attached. on this ____ day of September, 1914. The Rex Petroleum Co., Jas. A. Mascho, Its President. Attest: E. A. Hawley, Its Sec.-Treas.

"Accepted: R. S. Ayers, Assignee."

To plaintiff's petition, with exhibits attached, defendants filed the following demurrer:

"Now come the defendants, and, demurring to the petition herein, they state that the same does not set forth facts sufficient to constitute a cause of action against the defendants.

"II. It appears from the petition that the plaintiff is seeking to recover upon an oral agreement which varies the terms of a written contract.

"III. It appears from the petition and the exhibit to the same that the oral agreement agreed upon was entered into prior to the execution of the written contract referred to in the petition, and is an attempt to vary the terms agreed upon in the written contract referred to in the petition.

"Wherefore the defendants ask to be discharged, with their costs."

Which demurrer was by the court sustained, and this action of the court is brought here for review upon the following assignments of error:

"That the district court of Oklahoma county erred in sustaining the demurrer of the said Black Panther Oil & Gas Company, a corporation, and Howard Webber, defendants in error to the petition of the said Rex Petroleum Company a corporation, plaintiff in error.

"II. Said court erred in dismissing the petition of the said plaintiff in error.

"III. The said court erred in rendering judgment in favor of the defendants in error and against the plaintiff in error for the costs of the said action."

Plaintiff declared upon an oral contract by the terms of which it claimed that defendants were due it the sum of $1,000 as commission for the sale of 1,000,000 barrels of oil. The written contract which plaintiff attached to its petition embodied the terms and condition which defendants desired to be kept and observed in the sale of the oil. It was alleged by plaintiff that it was understood at the time that the written contract was executed, that the same was to be used in closing a deal with the prospective purchaser by merely assigning the same, and upon the assignment of said written contract to a responsible purchaser for the 1,000,000 barrels of oil the commission of $1,000 would be due.

In the case of Peugh v. Davis, 96 U. S. 332, 24 L. Ed. 775, the court had under consideration the right to redeem real estate, the title of which had passed under a deed absolute, but which plaintiff claimed had been made to secure a loan, and the court uses the following language:

"It is an established doctrine that a court of equity will treat a deed, absolute in form,

as a mortgage, when it is executed as security for a loan of money, that court looks beyond the terms of the instrument to the real transaction; and when that is shown to be one of security, and not of sale, it will give effect to the actual contract of the parties. As the equity, upon which the court acts in such cases. arises from the real character of the transaction, any evidence, written or oral, tending to show this is admissible. The rule which excludes parol testimony to contradict or vary a written instrument has reference to the language used by the parties. That cannot be qualified or varied from its natural import, but must speak for itself. The rule does not forbid any inquiry into the object of the parties in executing and receiving the instrument. Thus, it may be shown that a deed was made to defraud creditors, or to give a preference, or to secure a loan, or for any other object not apparent on its face. The object of parties in such cases will be considered by a court of equity; it constitutes a ground for the exercise of its jurisdiction, which will always be asserted to prevent fraud or oppression, and to promote justice. Huges v. Edwards, 9 Wheat. 489, 6 L. Ed. 142; Russell v. Southard, 12 How. 139, 13 L. Ed. 927; Taylor v. Luther, 2 Sumn. 228, Fed. Cas. No. 13,796; Pierce v. Robinson, 13 Cal. 116."

Huffcut's Anson on Contracts (11th Ed.) p. 325, par. 337, in discussing a rule of evidence, says:

"337. Evidence of Condition Suspending Operation of Contract. It may also be shown by extrinsic evidence that a parol condition suspended the operation of the contract. Thus a deed may be shown to have been delivered subject to the happening of an event or the doing of an act. Until the event happens or the act is done, the deed remains an escrow and the terms upon which it was delivered may be proved by oral or documentary evidence extrinsic to the sealed instrument. In like manner the parties to a written contract may agree that, until the happening of a condition which is not put in writing, the contract is to remain inoperative. Campbell agreed to purchase of the Messrs. Pym a part of the proceeds of an invention which they had made. They drew up and signed a memorandum of this agreement on that express verbal understanding that it should not bind them until the approval of one Abernethie had been expressed. Abernethie did not approve of the invention, and Campbell repudiated the contract. Pym contended that the agreement was binding, and that the verbal condition was an attempt to vary by parol the terms of a written contract. The court, as has been maintained in a recent case, held that evidence of the condition was admissible on the ground thus stated by Erle, J, : 'The point made is that this is a written agreement. absolute on the face of it, and that evidence was admitted to show it was conditional, and if that had been so it

would have been wrong. But I am of opinion that the evidence showed that in fact there was never an agreement at all. The parties met and expressly stated to each other that, though for convenience they would then sign the memorandum of the terms, yet they were not to sign it as an agreement until Abernethie was consulted. I grant the risk that such a defense may be set up without ground. and I agree that a jury should therefore always look on such a defense with suspicion; but, if it be proved that in fact the paper was signed with the express intention that it should not be an agreement, the other party cannot fix it as an agreement upon those so signing. The distinction in point of law is, that evidence to vary the terms of an agreement in writing is not admissible. but evidence to show that there is not an agreement at all is admissible.' Prattle v. Hornibrook [1897] 1 Ch. 25; Pym v. Campbell, 6 E. & B. 374."

And so in the instant case it appears from a reasonable interpretation of the pleadings that there was but one contract made between the parties, and that was the oral contract. The written contract attached to plaintiff's petition was in fact no contract at all, and was only to be used upon the happening of a certain contingency; that is, that the plaintiff was able to find a purchaser for the oil who was willing to buy the same under the terms and conditions expressed in the written contract, and the contract was to be of no force and effect until the same should be vitalized by assigning the same to a responsible purchaser, since that was the object of the parties in making and entering into the written contract and we do not think that the cause of action declared upon by plaintiff was an attempt to recover upon an oral contract which changed the terms of a written contract. As we view it, the written contract was merely ancillary to the oral contract, and was made between the parties so that the oral contract might be carried out without unnecessary delay. Plaintiff alleged that the said written contract, which it attached to its petition, was made for the purpose of facilitating the sale of said oil. It can readily be understood why this contract was made, and why it was necessary to facilitate the sale of said oil. By having the written contract, the only thing necessary to be done to close the sale of the oil under the conditions desired to be kept by the defendants would be merely to assign the written contract. If plaintiff had not been armed with the written contract, with the privilege of assigning same upon finding a prospective purchaser, then it would have been necessary for plaintiff to have taken the prospective purchaser to the defendants, and there agree upon the terms of the sale and

draft the conditions of the contract; as it was, it was only necessary for the plaintiff to assign this contract in order to complete the sale. The written contract was an incident to the oral contract, and was made so that the oral contract might be carried out with dispatch and without unnecessary delay. As between the original parties to the written contract, it was no contract at all, and was only to become such upon the happening of a certain contingency; that was the finding of a prospective purchaser who was willing to buy the oil upon the terms and conditions expressed in the written contract. While the petition perhaps was not as clear and specific as it could have been, we think that by a fair interpretation that it declared upon an oral contract, and no other, and stated a cause of action, which could not be successfully assailed by the demurrer filed.

On account of the error of the court in sustaining the demurrer to plaintiff's petition, and dismissing the petition of plaintiff, this cause is reversed and remanded, with instructions to proceed in accordance with this opinion.

By the Court: It is so ordered.