## EDWARDS v. CITY NAT. BANK OF McALESTER.

No. 10188—Opinion Filed Sept. 13, 1921.

Rehearing Denied Oct. 18, 1921.

(Syllabus.)

**1. Evidence—Parol Evidence Varying Writings.**

The rule that a written contract cannot be altered, changed, or terms varied, in the absence of allegations and proof of mistake, fraud, or failure of consideration, by parol proof, does not apply invariably and without exceptions, and one of those exceptions is that where a transaction is entered into between parties the terms of which are yet to be carried out, in other words, are executory, as future covenants and promises, some of the provisions of which are verbal and some one or more are in writing, the above rule as to varying the terms of a contract does not apply, and the parol terms and provisions of said contracts may be proved. And this is upon the theory that the main transaction rests in parol and the written portion being an incident connected with the main transaction.

**2. Same—Action on Note by Bank — Defenses — Parol Agreement to Protect Maker.**

Where E. executed promissory note to a bank of which C. was president, and before E. executed the note, C., representing said bank, as an inducement to E. to sign the note to said bank, represented to E. that a business concern in which E.'s son-in-law was a partner, was in a failing condition and that the bank had advanced all the money to said concern that it could do legally and that the bank was liable to lose a certain security held by it on the property of said concern by reason of bankruptcy proceedings if settlement with the creditors of said concern was not carried through, and that it would be necessary for said bank to advance a certain amount of money to consummate said settlement, and that it was desired that E. sign a note to the bank to cover the amount of said advancement, and that if E. would sign said note, the bank would supervise and carry through said settlement and see that the concern was sold out and that the proceeds of said sale would be applied in liquidation of the debt and note which it was sought that E. execute before any of said fund would be applied to any debt owed to the bank, and other promises were made as to the handling of said settlement that would safeguard and procure the liquidation of the note by E., and upon said promises and assurances E. signed said note, and afterwards the consummation of said plan was carried out and the bank and C. came into possession of the funds from said sale of the business and had charge of the disbursement of the same—held, that E. could prove the terms of said agreement; and held, further, that the bank was in a position, in the nature of a trustee for E., and that E. can hold the bank to a faithful performance of the terms of said agreement.

Error from District Court, Pittsburg County; R. W. Higgins, Judge.

Action by the City National Bank of McAlester against Sarah J. Edwards on promissory note. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

O. A. Keach and A. C. Markley, for plaintiff in error.

Fuller, Porter & Fuller, and J. S. Arnote, for defendant in error.

ELTING, J. This action was brought by the City National Bank of McAlester against the defendant, Sarah J. Edwards, on a promissory note, and was filed on March 28, 1916, and prayed for judgment against the defendant in the sum of $3,087.33, together with interest thereon at 10% per annum from the first day of February, 1916, until paid.

The plaintiff, at the same time, filed an affidavit for attachment, asking for same upon the grounds that the defendant was a nonresident of the state of Oklahoma and resided at Wichita, state of Kansas, and caused an attachment to be issued and levied upon a residence of the defendant in the city of McAlester, Oklahoma, and afterwards caused service to be had by publication.

On the 20th day of December, 1916, the defendant filed an answer in said cause. Said answer contained a general denial of the allegations of the plaintiff's petition, except such allegations as were admitted in the answer. The allegations of said answer, in substance, as follows:

That J. F. Craig was president of the plaintiff bank at the time the transaction and incidents hereinafter set forth took place, and that he was the agent of the said bank in said transaction. That during the year 1912, Ben Durfee, a son-in-law of the defendant, was engaged in a mercantile business in the city of McAlester, and that said business was conducted under the name of Ben Durfee & Company and was a partnership composed of Ben Durfee and another party. At the close of 1912, the said concern became insolvent; owed more debts than it could pay and was in bankruptcy. And that the plaintiff bank undertook, through J. F. Craig, to make a settlement, and did make a settlement with the creditors of said concern, at 30 cents on the dollar. That it was estimated by J F. Craig that it would take something like $6,500 to make the settlement, and that said bank had already advanced to Ben Durfee & Company all the money it could legally, which amount so advanced was in the sum of $6,500. That on or about the third day of April, 1913, the said president of plaintiff bank, J. F. Craig, appeared at the home of the defendant, Sarah J. Edwards, in company with Ben Durfee, and the defendant, talking through and being represented by her daughter, Mrs. Durfee, had a transaction with J. F. Craig—if not with the specific consent of Ben Durfee, representing Ben Durfee & Company, it was at least by his implied assent thereto—and as a result of the negotiations this defendant signed the note sued on herein.

That defendant was not inclined to sign the note, but it was represented by J. F. Craig to Mrs. Durfee, as the agent of her mother, the defendant—and it is alleged that a part of the transaction of which was in the presence of and in the hearing of Mrs. Edwards, the defendant, whereby it was represented by Craig that the bank had advanced all the credit to Ben Durfee & Company that it could legally advance and that it was necessary that a settlement with the creditors be made, and asked the defendant to sign a note covering the amount of $6,500, not with a view of collecting the same from the defendant, but the indebtedness would be carried in her name to make it legal. It was further represented to her that the settlement could be made at 30 cents or the dollar, and only such part of the $6,500 as was needed to make the settlement would be used, and what was not used would be credited on the note. It was further represented that the bank held a mortgage on property belonging to the concern at Kiowa, Oklahoma, and that they would give credit for $4,000 on the debt then due the bank from the concern when a deed was given to said property to the bank. It was further agreed that for the balance of said indebtedness due from the concern to the bank, in the sum of $2,500, the bank was not to participate in the 30% settlement. It was further agreed by the bank that Ben Durfee would keep in charge of the business under the control of the bank, and that as soon as the same could be done, said business would be sold; and that the indebtedness of said concern would be paid out of the proceeds of the sale, including the balance of the debt covered by the note, and that the debt of the bank was not to be paid out of said proceeds until the amount covered by the note by defendant was first settled. It was further alleged that on the strength of these representations and assurances, believing that they would be carried out, the defendant signed said note.

That settlement was perfected and consummated whereby the debts of the concern were paid and settled at the rate of 30 cents on the dollar, and that the amount of money covered by said note was in excess of what was required to liquidate said indebtedness at 30 cents or the dollar in the sum of $961.03, and that this amount was credited by two different credits on said note. This was in pursuance of the agreement made by Mr. Craig, representing the bank, with the defendant. That in breach of one of the agreements made with the defendant, however, the bank permitted the balance of the indebtedness of $2,500 due from the concern to the bank to participate in that settlement and receive $750 that should have

been credited, as the defendant contends, upon her note, in addition to the $961.03.

That afterwards a deed was made to the property in Kiowa to the bank for $4,000, which would cut the debt due by the concern of Ben Durfee & Company to $2,500. That about a year after the note was executed, a sale of said concern was consummated to one Joe Bell, who paid something like $13,500 for said property. This sale was consummated by J. F. Craig and Ben Durfee acting together and the money was paid into the bank and by it disbursed.

That Ben Durfee and J. F. Craig secured a settlement with the creditors at 56 cents on the dollar. That after the settlement with said creditors there was a considerable sum of said proceeds of said sale still remaining in said bank and that J. F. Craig, without consulting this defendant in any particular about the transaction and in breach of his agreement with the defendant, in addition of paying 30% of the debt of $1,000 owed to the First National Bank of Mc Alester, and a note of $1,000 owed by Ben Durfee to the bank of Krebs, paid to the first named bank $443.27, and to the bank of Krebs $418.35, which two amounts should have gone to the liquidation of the debts evidenced by defendant's note under the agreement.

That, in addition thereto, this plaintiff bank, through J. F. Craig, had charged up against said fund and liquidated $1,759 of debts of the concern in favor of the bank instead of crediting the note upon which defendant was sued, and as it was agreed by J. F. Craig with the defendant and Mrs. Durfee, her agent, would be done if she would sign said note.

Then the answer alleges and states that the defendant owed the bank nothing and prays that the defendant be permitted to go hence without day.

The plaintiff filed a demurrer to portions of the defendant's answer setting out her defense as above recited, and the same was by the court overruled. Whereupon the plaintiff filed a reply, denying the allegations of the answer and admitting that J. F. Craig was the duly appointed and acting agent of the plaintiff bank. Whereupon the plaintiff made proof of the execution of the note and rested. Whereupon the defendant introduced her evidence in support of the allegations of her answer. The plaintiff offered no evidence in rebuttal thereto and the plaintiff demurred to the evidence of the defendant as not constituting a defense to the plaintiff's action on the note, and said demurrer was sustained by the trial court. Then it was moved by the plaintiff that the court instruct the jury to return a verdict in favor of the plaintiff for the amount of the note sued upon. The court directed the jury to return a verdict in favor of the plaintiff. The court was then requested to sustain the attachment upon the residence of the defendant, and the same was done.

Defendant filed a motion for a new trial, and same was overruled, and gave notice of and prayed an appeal to this court, and the same appears in this court upon said appeal and petition in error with case-made attached, setting up several grounds of error.

The main and really only proposition for the decision of this court is the question: Did the court commit error in sustaining the demurrer to the evidence and directing a verdict? We hold that the trial court did commit error in sustaining the demurrer to the evidence and directing the verdict. We have reviewed and examined the evidence, and find that, under the pleadings and proofs adduced and uncontradicted, the defendant has made proofs supporting the answer and that in the absence of any rebuttal proofs the trial court committed error in sustaining the demurrer to the evidence and in instructing a verdict for the plaintiff bank.

We will state briefly the reasons for our holding in this matter.

Our holding in this matter is that, under the facts as alleged and proved by the defendant and uncontradicted, the transaction proved constituted a verbal understanding constituting a comprehensive plan for the handling of the estate of the concern in which the defendant's son-in-law was a partner, and that the taking of the note was one of the incidents connected with the said plan. That in right, law, and in equity, if the proofs of the defendant are to be taken as true, and under the state of this record they must be so taken, the plaintiff bank was bound in good faith to carry out the agreement that had been made by its president with the defendant. The bank, through J. F. Craig, as the uncontradicted proofs show, had the absolute charge and control of and did handle and control the settlement and liquidation of this estate, and did so without in any manner consulting this defendant or her wishes in the matter. If the handling of said estate had been

conducted in accordance with the agreement, and as the uncontradicted proofs show it to have been, the debt, if any the defendant owed the bank, would have been liquidated and paid either in part cr in full, as the facts may show.

We state that the examination of the record shows that the allegations of the defendant's answer are fully supported by the evidence of the defendant. The following is quoted from pages 21 and 22 of defendant in error's brief: `

"There is no evidence of the amount of cash that came into the hands of Mr. Craig. Bell could not tell and there is nothing in the record that warrants the computations made by the counsel for the defendant in their brief filed in this case, in which they attempt to show that there was received $13,500 and then attempt to figure from the checks offered in evidence that there was a large sum left of cash in the hands of Mr. Craig undisbursed, and much more money than enough to pay the Edwards note.

"The facts are that if the demurrer to the evidence had not been sustained and we had put on our rebuttal evidence the record would have shown that the amount due to the Carelton Dry Goods Company on its 56% distribution would have amounted to $2,677.42 and there was only $1,527.43 paid in cash and the balance was paid by Bell making a note to the Carelton Dry Goods Company for $1,149,-99, which note was left oy the Carelton Dry Goods Company for collection with the City National Bank, and that is the note that Mr. Bell referred to in his testimony on pages 157 and 158.

"The evidence shows that there was no check made for the note of $1,750.00 which Durfee owed the bank. There was also a large overdraft owing the bank from Ben Durfee at the time of the sale to Bell which participated in the distribution of the cash that was paid into the City National Bank, all of which would have been shown on rebuttal testimony, although no check was given in payment of that. We merely call attention of this to the court to show that the calculations in the brief of counsel for the plaintiff in error is of no value whatever and proves nothing and in no way tends to sustain the theory of the plaintiff in error."

The defendant in error in. the statement of course is talking outside of the record.

We think that the statement in the plaintiff in error's brief on page 125 states the truth as to what the uncontradicted evidence in this record shows

as to the state of the account as to this fund which came into the hands of the plaintiff bank or its president and was disbursed by J. F. Craig:

"Under these authorities the conclusion seems inevitable that the note has been paid in full and this fact may be shown by any competent evidence, whether in writing or in parol. The very fund which it was agreed should come into Mr. Craig's hands to pay the note was actually received by him and he applied $2,303.88 of it on the principal of the note. There was no agreement that he was to apply only that amount and then stop. He had an abundance of the specific fund left after compromising with the last creditors of the store at fifty-six cents on the dollar, to settle the Edwards note in full, and the law says that he must use this fund as agreed. Not only do the decisions of the courts hold this to be the law, but the statutes of Oklahoma on negotiable instruments permit parol evidence to show the method of payment and discharge of promissory notes. See sec. 4169, Statutes of 1910."

It appears from the evidence that the proceeds received by the bank for the sale of the concern, Durfee & Company, amounted to something like $13,300. According to the proofs there was only expended in satisfaction of the new crop of creditors, who were settled with at 56 cents on the dollar, the sum of $7,609.39, which would leave unexpended of the proceeds of the sale and still in the possession of the bank, $5,690.61, which would be $151.64 in excess of the balance due on said note after giving credit for $500, and the other item of $461.03 not used in the first settlement, and which two items were credited by Mr. Craig on the note, and by which credit the bank admitted that it was agreed that the note should be credited.

The evidence further shows, and is uncontradicted, that J. F. Craig acted solely without the consent of or in any manner consulting the defendant as to any of said matters:

The following authorities are in point and apply in this case:

Stuart v. Meyer (Tex.) 196 S. W. 615, the third paragraph of the syllabus of which case reads as follows:

"The rule which excludes parol evidence when offered to contradict or vary the terms, provisions, or legal effect of written instruments has no application to collateral undertakings or cases in which the written instrument was executed in part performance of an entire oral agreement."

The case of Goldstein v. Union Nat. Bank of Dallas (Tex. Civ. App.) 216 S. W. 409,

is almost identical with the one at bar, if not entirely so. The principle is absolutely identical and applies to a state of facts such as was proven in the instant case. The first the fifth paragraphs of the syllabus read as follows:

"Where a national bank loaned money to the statutory limit to a company, and, that the company might have further funds, agreed with defendants, its vice president and a controlling stockholder of the company, to discount their notes, paying the proceeds to the company, and to apply in extinguishment of the notes, deposits subsequently received from the company, the agreement was collateral to the promise in the note sued on, executed pursuant to it, and was not merged in the note, being provable by parol and valid as a defense, whether made orally or in writing."

"Where a company solicited its controlling stockholders to execute a demand note to be discounted for its benefit with a national bank agreeing to make deposits with the bank to be applied solely to payment of the note, to which the bank agreed, and subsequently sufficient deposits were made to pay off the note, though the bank wrongfully applied them to another debt, the bank cannot recover against the accommodation makers on the note, which, in legal contemplation, has been paid."

In the case of Mackin v. Darrow Music Co., 69 Oklahoma, 169 Pac. 497, a part of the second paragraph of the syllabus reads as follows:

"Where the plaintiff sold to the defendant a piano at a stipulated price, to be paid a certain amount down and the balance in installments, and the plaintiff retaining title to the same until full amount was paid, the terms of the sale being evidenced by a written contract, it is competent for the defendant to show by parol evidence in an action for the balance due on the purchase price that the plaintiff and the defendant entered into a contemporaneous parol agreement whereby it was agreed that the defendant might pay for the piano in hauling for the plaintiff, and that the plaintiff breached the parol agreement by refusing to furnish the defendant hauling as provided for in the parol agreement, as the parol agreement did not contradict or vary the written contract except as to the matter of the payment, which could be shown by parol."

To the same effect is Weeks v. Medler, 20 Kan. 57, by Justice Brewer; Rex Petroleum Co. v. Black Panther Oil & Gas Co., 66 Oklahoma, 166 Pac. 1083; Noel v. Kessler (Pa.) 97 Atl. 446.

Section 4169 of the Statutes of Oklahoma 1910, reads as follows:

"When an instrument is discharged:

"A negotiable instrument is discharged: * * * fourth, by any other act which will discharge a simple contract for the payment of money."

It is contended very strenuously by the plaintiff bank in its brief that this is an attempt to vary and modify a written contract by parol proof. We assert that that is not the fact in this case. The defendant proved a contemporaneous verbal agreement with the bank providing how and in what manner and method such credit and debt should be liquidated, and the evidence shows, under the facts as proven and uncontradicted, that the bank had it within its power and control to carry out and consummate said agreement as made with the defendant, and if that had been done, said debt of the defendant would have been paid either in part or in full, as may be shown by a proper accounting. This right to such an accounting the ruling of the trial court denied the defendant.

The plaintiff bank cites the case of Colbert v. First National Bank, 38 Okla. 391, 133 Pac. 206, as applicable to the facts in this case. We have examined that case, and find that the same does not apply to the case at bar. Colbert, the plaintiff in error, undertook to plead that he was not to be bound and held responsible on a note for $7,000, which he had signed and delivered to the bank, as surety for his brother, B. H. Colbert. He did not allege mistake, fraud, or failure of consideration, but pleaded a defense that was absolutely contradictory to the written terms of the contract. Neither did Colbert plead that there was a conditional delivery of his note.

The issue involved in the Colbert Case, and the only issue involved, is stated in the opinion in the following language:

"At the trial plaintiff in error undertook to introduce evidence to establish a parol agreement with the cashier of the defendant bank, by which it guaranteed that he should not be personally liable on the notes. The rejection of this testimony constitutes the only assignment of error presented for the reversal of the cause."

We think that this court, in the cited case, upon the issue involved therein, decided correctly. But the law laid down in the cited case does not apply to the facts and issues involved in the instant case. If we understand the defense pleaded and undertaken to be proved in the instant case, the defendant is not relying upon the fact that she is not bound by said note, and is not relying upon any parol contract that she

was not to be bound by signing the note. If such were the contention of the defendant, we would hold against her. Our understanding of the contention of the defendant is that J. F. Craig came to her with a plan and scheme for getting Durfee & Company out of financial difficulties and to prevent a loss to the bank of which Mr. Craig was president, and to assist in promoting and carrying through that plan the note was taken as an incident of the plan. Under the uncontradicted facts of the record this plea is corroborated by the fact that the note of the defendant, Mrs. Edwards, was of no financial force, as the only property which she possessed was the homestead on which she resided with the family of her daughter, and by the further fact that Mr. Craig, president of the bank, asked no security for said note.

The plan was detailed to Mrs. Durfee and Mrs. Edwards by Mr. Craig whereby the amount of this money, $6,500, to be advanced by the bank, was to be liquidated. The uncontradicted proofs show that Mrs. Edwards relied on this plan being carried out, and the bank and Mr. Craig, its president, having it in their power, as shown by subsequent events, to carry it out, the defendant had a right to demand that the bank comply with its plan and agreement as far as it affected her.

The record in the instant case does not disclose that Mrs. Edwards, the plaintiff in error, was guilty of any bad faith, carelessness, or other dereliction of duty; neither have the rights of any innocent person intervened. And it is right, it is equity, and it is the law, that the defendant in error and its agent be compelled to carry out this agreement with the plaintiff in error in good faith.

The reason that the litigants, in some instances, do not get their contentions litigated in accordance with right and merit is not the fault of the law or its established principles; but such failure is in many instances due to a wrongful application of the law, and this is for the reason that courts are often swayed by an over-eager sense of the force of technical law and often fail to search out and apply the proper rule. The law says that no wrong shall go uncorrected for want of a remedy. And while the law will not place a premium on carelessness and lack of diligence, its policy is, however, against permitting one to admit the commission of a wrong and plead a technicality to escape the consequences of such wrong.

Speaking of the changed attitude of the courts on the enforcement of technical rules, Mr. Justice Cooper, of the Supreme Court of Tennessee, in the case of Jordan v. Jordan (Tenn.) 43 Am. Rep. 297, makes the following observation:

"No rule was better settled or longer adhered to by the courts than that under the common-law escrow there could be no conditional delivery to the grantee or obligee, It was so held by this court in 1851, and applied to an ordinary bill single for money (Johnson v. Branch, 11 Humph. 521) citing the old text-books and several then recent decisions of other courts. The same train of reasoning would have forbidden the delivery of an instrument conditionally to a co-obligor, who could not be treated as a third person in the old sense of the law, and so it has been expressly held. Willet v. Parker, 2 Metc. (Ky.) .608; Deardorff v. Forseman, 24 Ind. 481. But the rule is manifestly too technical for the attainment of the ends of justice, and this court has held, and there are decisions of other courts to the same effect, that a negotiable instrument may be delivered conditionally to a co-obligor. Perry v. Patterson, 5 Humph. 133, or to the payee or obligee himself. Breeden v. Grigg, 8 Baxt. 163; Majors v. McNeilly. 7 Heisk. 294. The modern tendency is to decide the rights of parties upon their merits. and not upon technical rules. Benton v. Martin, 31 N. Y. 382."

Proving this plan and scheme and agreement by parol was not contradiction of the terms of the note, which was made at the time the agreement was made, but was granting to the defendant the right to prove how the debt, evidenced by the note, was to be liquidated. This contravenes no rule of law. and the proof of such an agreement is not out of consonance with the rule that forbids the introduction of parol proofs in **contradiction of written agreements.**

In the instant case, while there are some intimations in the plea that there was an agreement that Mrs. Edwards was not to be bound and held responsible upon the note, and which we would have held, if she had relied upon the same as her defense, to be not a legal defense. since the note was not delivered conditionally, yet such is not the defense that she relies upon in this case. To repeat. she relies upon a collateral oral agreement entered into by the bank with her providing how the bank should handle certain funds and proceeds in liquidation of her note. and which was in the power and control of the bank to carry out, and which. under the proofs. they have failed to do. and which is parallel with and almost identical with the facts in the case of Gold-

stein v. Union National Bank of Dallas, Texas, heretofore cited.

The third paragraph of the syllabus of the case of Stuart v. Meyer (Tex.) 196 S. W. 615, reads as follows:

"The rule which excludes parol evidence when offered to contradict or vary the terms, provisions, or legal effect of written instruments has no application to collateral undertakings or cases in which the written instrument was executed in part performance of an entire oral agreement."

The principle enunciated in the instant case and applied to the facts therein is discussed in 10 R. C. L. 1019, chapter on Contracts. sections · 211, 213, 228, and 230. Section 228 reads as follows:

"Generally — The authorities are agreed that a parol contract may be added to a written one, and the two may stand together though made simultaneously. The same principle declares that the reduction to writing of one feature of an entire transaction in part execution thereof does not preclude proof by parol of the other features. Otherwise stated, the rule is that proof is admissible of any collateral parol agreement or independent fact, which does not interfere with the terms of the written contract. though it may relate to the same subject-matter; and whether such collateral agreement was made or independent fact occurred contemporaneously with or as preliminary to the main contract in writing, `,, ,· ir·mn!o i·l 1·· o·der, however.` to permit parol evidence to be admitted to show an agreement collateral to a written contract, it must appear, according to some authorities, either from the contract itself or from the surrounding circumstances, that the contract is incomplete. And such a collateral parol agreement is not admissible in evidence when the effect is to alter the scope and meaning of the written instrument."

In the instant case. the bank was in a relation of trust toward Mrs. Edwards in carrying out the plan and provisions of the agreement made with her at the time the note was signed by Mrs. Edwards.

While we are upon this subject, we will state that Mrs. Edwards, the defendant in this case, was purely an accommodation obligor. She had no direct financial interest in this transaction, but there was an ample legal consideration to bind her in this transaction. There can be a conditional delivery of a note, and the condition must be complied with before it becomes a binding obligation as between the parties to the transaction. And this can be shown as a defense to a note as between the parties. The allegations of the defendant's answer and her proofs are not sufficient to show a conditional delivery. We can illustrate the legal distinction in the following manner: A. signs a note as surety for B. to C. with the understanding that, before said note is delivered and becomes binding upon A., D. and E. are to sign as sureties. If the payee of the note has notice of such condition, and D. and E. do not sign, A. can defend against said note as being not binding and of no effect. Upon the other hand, if A. signs a note as surety for B. to C.. with the understanding with the payee and the principal that they are to procure the signatures of D. and E. on said note as additional sureties, and they fail to procure those signatures. A. is bound to the payee on said note; but he has a right to set up damages for a breach or failure to procure the signatures of the two additional sureties; since, if the additional sureties are solvent, he would be entitled to contribution. In the first instance, the surety is not bound upon proof of breach of condition and notice to payee. In the second instance, he is bound to the payee, with, however, a cause of action by way of counterclaim for any damage suffered by reason of a breach of covenant. For a discussion of these distinctions and principles, see the following Oklahoma cases: Sellers et al. v. Territory ex rel. County Attorney, 32 Okla. 147, 121 Pac. 228; Mitchell v. Altus State Bank, 32 Okla. 628. 122 Pac. 666; Rex Petroleum Co. v. Black Panther Oil & Gas Co., heretofore cited.

The first paragraph of the syllabus of Mitchell v. Altus State Bank, above cited. reads as follows:

"It is no defense to the maker of a nonnegotiable note that it is signed upon a mere representation or promise that the payee would procure a third person to sign it. The rule, however, as to such a note is different where at the time of signing it is understood that the note was not to become a completed or binding obligation until signed by another, nor to be delivered until so signed."

The judgment of the trial court is therefore reversed, and this cause is remanded for a new trial not inconsistent with the holdings herein.

HARRISON, C. J.. PITCHFORD. V. C. J.. and JOHNSON. McNEILL and KENNAMER. JJ., concur; NICHOLSON, J.. dissenting: KANE and MILLER. JJ., not participating