The AMERICAN PERFORATING COMPANY, Inc., a corporation, Charles S. Mayfield and Dorothy Mayfield, individually, Plaintiffs in Error,

v.

OKLAHOMA STATE BANK, Ada, Oklahoma, a corporation, Defendant in Error.

No. 42330.

Supreme Court of Oklahoma.

Jan. 6, 1970.

Benjamin E. Stockwell, Norman, Marian P. Opala, Oklahoma City, for plaintiffs in error.

A. W. Trice, Harvey J. Lambert, Lambert, Roberts & Lewis, Ada, for defendant in error.

LAVENDER, Justice.

This appeal arises in an action in replevin, in which the defendant in error herein, Oklahoma State Bank, Ada, Oklahoma, also sought a money judgment against the plaintiffs in error herein, as defendants, on seven promissory notes, each of which, the bank alleged, was secured by a separate security agreement and a separate financing statement (provided for in the Uniform Commercial Code) upon which the bank based the replevin branch of its case.

The appeal, by the defendants in the trial court (The American Perforating Company, Inc., a corporation, and Charles S. Mayfield and Dorothy Mayfield), is bottomed upon the action of that court in sustaining the bank's separate demurrers to the defendants' answer and cross-petition.

When the bank's demurrers to the answer and cross-petition were sustained, the defendants were given time within which to amend their answer and cross-petition, but, during that time, filed a written election not to plead further and to stand on such answer and cross-petition. Thereafter, upon the bank's motion for judgment, and a hearing thereon, the trial court entered judgment for the bank and against the defendants, substantially as prayed for in the petition, after allowing proper credit for the proceeds of personal property listed in the security agreements and financing statements and sold, in replevin, after the commencement of the bank's action.

A photographic, signed copy of each of the twenty-one instruments pleaded by the bank is attached, as an exhibit, to the petition, and, except that one of the notes (the third one) does not bear the name of Dorothy Mayfield as an endorser, each of the instruments is executed and/or endorsed in the names of the various defendants as alleged in the petition.

According to the tenor of each of the first three notes, the defendants promise to

pay to the bank, or order, a stated principal amount of money ($20,525.00, $7,873.00, and $4,017.04, respectively) on a date specified therein; and, according to the tenor of each of the last four notes, the defendants promise to pay to the bank, or order, a stated principal amount of money ($11,029.67, $1,700.00, $2,500.00, and $6,758.15, respectively) on demand. Each of the notes provides for the payment of interest, and for an attorney's fee in the event of default. A payment of $200.00, prior to the expressed maturity thereof, is endorsed on the first note, and the defendants do not deny making such a payment on that note.

The bank's petition, which alleges default on all seven of the notes (except for the $200.00 payment on the first note) was filed more than two months after the date of the last demand note and more than six months after the latest maturity date specified in any of the notes having a stated maturity date.

In their answer, and cross-petition (for damages allegedly resulting from wrongful acts by the bank in commencing its action and taking and selling, in such action, a portion of the personal property listed in the financing statements and security agreements pleaded by the bank), the defendants admitted the execution of each of the twenty-one instruments pleaded by the bank as indicated by the exhibits attached to the bank's petition, and also admitted receiving from the bank, on the date of each of the seven notes, money equal to the principal amount of the note. They then pleaded facts and conclusions intended to constitute a defense to the bank's action and a basis for their own action for damages, and allegations concerning their alleged damages.

They pleaded that, because of, and under, an oral agreement between the bank and the defendants, none of the indebtedness indicated by any of the seven notes pleaded by the bank had become due and payable, and that, therefore, the bank had no right, at the time of commencing the action, to bring such an action for a money judgment on any of the notes or for possession and sale of any of the personal property listed in any of the financing statements and security agreements, and the taking and sale, in such action, of a portion of such property constituted a conversion of the property.

The defendants alleged that, prior to the execution and delivery of the first note pleaded by the bank, the bank, acting by and through its proper officers, and the defendants, with the individual defendants acting for themselves and as proper officers of the corporate defendant, entered into a *comprehensive* oral agreement concerning the financing of the corporate defendant in starting a business of "customizing" and equipping trucks for special work in oil fields (well cementing work) and renting and/or selling such trucks to others for that purpose.

They alleged that, in such oral agreement (which, they alleged, was renewed, ratified and affirmed at the time each of the notes was executed and delivered to the bank), it was agreed that the corporate defendant would purchase three trucks and the equipment needed to customize and equip them for such service and would do the work of customizing and equipping them for rental and/or sale to others; that the bank would advance the money, from time to time as needed by the defendant, required for purchasing and equipping the three trucks; that the bank would attempt to obtain, from the Small Business Administration of the United States, a commitment to make a long-term loan to the defendants, when all of such trucks were ready for utilization in the corporate defendant's business, in an amount sufficient to repay the bank for its advances, with interest, but, if such a commitment could not be obtained from that federal agency, all of such indebtedness would, after all these trucks were ready for utilization in the corporate defendant's business as contemplated by such agreement, be incorporated in a single, long-term, promis-

sory note payable to the order of the bank, to be executed by the corporate defendant and endorsed by the individual defendants as guarantors.

The defendants also alleged that, in such oral agreement, it was agreed that, at the time of each advance by the bank, the defendants would so execute and endorse a note payable to the order of the bank in principal amount equal to such advance; that none of such notes would constitute a binding promise to pay in accordance with the provisions thereof, but each such interim note would only constitute written evidence of indebtedness in the amounts stated therein, which would be included, along with the amounts stated in all other such interim notes, in the single, long-term, promissory note (to the Small Business Administration or to the bank, as the case might be) provided for in such comprehensive oral agreement.

They also alleged that, in part performance of such comprehensive oral agreement, the bank advanced the money as needed by the defendants for the purposes contemplated by such oral agreement, in the respective principal amounts stated in the seven notes, and that, relying upon the original, comprehensive oral agreement and the renewal, ratification and affirmation thereof at the time of each of the advances by the bank, and in part performance of such oral agreement, the defendants executed and delivered each of the seven notes as the money was advanced by the bank, and used all of the money so advanced by the bank for the purposes contemplated by such comprehensive oral agreement. In connection therewith, the defendants alleged that none of the seven interim notes, so executed and delivered to the bank, was intended by the parties to constitute a written memorandum of a separate oral agreement concerning the particular subject matter of that note, which preceded or accompanied the execution of the note, but that the execution of each of such interim notes was intended by the parties to be but

a part performance of their comprehensive oral agreement.

The defendants also alleged that, subsequent to the fifth advance and note but prior to the sixth advance and note, the bank, in part performance of the comprehensive oral agreement, wrote to the Small Business Administration about a long-term loan to the defendants to repay the bank for all indebtedness incurred under such oral agreement, and thereafter, in part performance of the comprehensive oral agreement, continued in its efforts to that end, but no commitment for such a loan was obtained from that federal agency; that, shortly before the bank commenced its action, all of the customizing work on all of the trucks contemplated by the oral agreement was completed and all of the trucks were ready for utilization in the corporate defendant's business as contemplated by such oral agreement, but that no long-term promissory note contemplated by such oral agreement (to the Small Business Administration, or to the bank) was ever signed or endorsed by any of the defendants; and that, therefore, the bank's action against the defendants was commenced before any of the indebtedness indicated by any of the seven notes became due and payable and there was any default whatsoever in the payment of any of such indebtedness.

In explaining why they had not signed, endorsed and delivered the single, long-term, promissory note to the bank provided for in the comprehensive oral agreement pleaded by them (even though every other act provided for in the oral agreement had been fully performed), the defendants alleged that, on two different occasions—once shortly before all of the trucks were ready for utilization in the corporate defendant's business, and once shortly after they were ready and about the time that the individual defendants commenced an action against the bank for overcharges of interest on loans to the individual defendants which did not concern the corporate defendant or any of the

transactions covered by the oral agreement —the bank, acting by and through its executive vice-president, informed the defendants that the bank would accept such a long-term note, if, but only if, the individual defendants would sign and deliver to the bank a written release from any and all overcharges of interest involved in that action by the individual defendants; that, although the defendants were ready and willing, both times, to sign and deliver to the bank such a long-term note, the individual defendants refused to execute the proposed release (an unsigned copy of which is attached to the defendants' answer and cross-petition and discloses that their allegations concerning the contents of the proposed release are correct); and that, therefore, no such long-term note to the bank was ever signed by any of the defendants.

Thus, it appears from the allegations of the defendants' answer and cross-petition that the oral agreement pleaded by them has been fully performed by all of the parties thereto, except that the bank has wrongfully refused to accept the single, long-term, promissory note contemplated by the oral agreement as the last step in the complete performance of the oral agreement.

Whether or not the defendants would have been entitled to have a court compel the bank to complete the performance of its obligations under the oral contract—as was prayed for and required, in the case involved in Edwards v. City National Bank of McAlester (1921), 83 Okl. 204, 201 P. 233, and City National Bank of McAlester v. Edwards (1924), 100 Okl. 202, 229 P. 487—they have not sought that relief, but rely upon a plea that, because of the alleged oral agreement, the bank's action is premature.

The bank's demurrer to the defendants' answer was upon the ground that the answer did not state facts sufficient to constitute a defense to the bank's causes of action; and the bank's separate demurrer to the defendants' cross-petition was upon the ground that the cross-petition did not state facts sufficient to constitute a cause of action in favor of the defendants and against the bank.

In its journal entry of the order sustaining such demurrers, the trial court did not state its reason for sustaining the demurrers. However, both sides assert that the trial court's action was upon the theory that the oral agreement pleaded by the defendants as the basis of their defense and cause of action against the bank (and the parol evidence which would be required to establish such defense and cause of action at a trial of the matter) would alter or vary those provisions of the seven promissory notes pleaded by the bank and admitted by the defendants in their answer and cross-petition, which concern the maturity of those notes, in violation of the provisions of 15 O.S.1961, § 137 (and the "parol evidence rule" which is based thereon).

15 O.S.1961, § 137 provides that:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument."

One way of stating the "parol evidence rule" is contained in the first paragraph of the syllabus to Brown v. Jones (1943), 192 Okl. 664, 139 P.2d 186:

"In the absence of accident, fraud, or mistake of fact, parol evidence is not admissible to vary the terms plainly expressed in a written contract;"

and the effect of that rule upon a pleading under attack for insufficient facts is set forth in the second paragraph of the same syllabus:

"It is not error to strike a cross petition based upon allegations of facts which would be inadmissible in evidence."

The defendants in the present case do not plead accident, fraud, or mistake of fact.

The statutory rule (15 O.S.1961, § 137) and the "parol evidence rule" are combined in the first paragraph of the syllabus to Posey v. Citizens' State Bank (1923), 93 Okl. 266, 220 P. 628:

"The execution of a contract in writing supersedes all oral negotiations or stipulations concerning its terms and subject-matter which preceded or accompanied the execution of the instrument, in the absence of accident, fraud, or mistake of fact; and any representation made prior to or contemporaneous with the execution of the written contract is inadmissible to contradict, change, or add to the terms plainly incorporated into and made a part of the written contract."

In stating the reason for the two rules, the court, in that case, quoted from Colbert v. First National Bank of Ardmore (1913), 38 Okl. 391, 133 P. 206:

" 'The notes upon their face absolutely and unequivocally bind plaintiff in error to pay same upon maturity. Their execution and delivery is not controverted. If he may show a parol agreement to establish that the contract, instead of being what it is expressed to be upon the face of the notes, is that plaintiff in error shall not be bound to pay [as provided for in the notes], then the very purpose of a written contract is destroyed, for its primary purpose is to create evidence incapable of dispute to establish what the final agreement of the parties thereto is. Although every person is presumed to know the law, a person may sometimes be ill advised relative thereto, and execute a written contract relying upon parol assurances that it will not be enforced. It is unfortunate, if such a person is deceived and is called upon to perform his contract; but it is better that he lose than that a principle so essential to the certainty and stability of contracts should be destroyed in order to relieve him from the consequences of his indiscretion."

The defendants first contend that these rules are applicable only with respect to *binding* written contracts, and do not preclude a preceding or contemporaneous oral agreement under which the delivery of the written instrument is upon a condition precedent—that is, where the effectiveness of the delivery (and, therefore, the effectiveness of the instrument as a binding contract) is conditioned upon the subsequent occurrence of some event. In support thereof, they cite In the Matter of the Estate of Minnie L. Fullerton, Deceased (1962) Okl., 375 P.2d 933; Harlow Publishing Company v. Walden (1934), 168 Okl. 163, 32 P.2d 278; Hogue et al. v. McClain County National Bank et al. (1935), 173 Okl. 122, 47 P.2d 575; and Buellesfeld v. Carpenter et al. (1942), 191 Okl. 301, 129 P.2d 1022.

Under the oral agreement pleaded by the defendants in the present case, the interim notes sued upon were to be (and, under the defendants' allegations, were) executed and delivered to the bank *only* as actual indebtedness, in the principal amount stated in each such note, was incurred by the defendants through the actual advancement to them of that amount of money by the payee and each such note was intended to (and, under the defendants' allegations, did) evidence a *present* indebtedness of the defendants to the payee, and an obligation to pay such principal amount, plus interest thereon as prescribed in the note, subject, however, to any valid provisions of such oral agreement concerning the manner and/or time of payment.

Neither the answer and cross-petition nor the briefs of the defendants alleges, infers, or suggests that, as in the Fullerton Estate case, supra, at the time they signed and delivered any one of the interim notes to the payee, they were not indebted and did not become indebted to the payee in any amount, and that the note was given only at the request of the payee for some special purpose of the payee, other than as evidence of actual indebtedness, and, under

the oral agreement, never to be paid. That case is not in point.

Likewise, neither the answer and cross-petition nor the briefs of the defendants alleges, infers, or suggests that, under their oral agreement with the payee, there was some condition, circumstance or eventuality in which, as in the Harlow and Hogue cases, supra, the delivery of such a note would not be effective and, therefore, note itself would not be effective for any purpose, or in which, as in the Buellesfeld case, supra, the principal amount to be paid by the defendants would, or might, be less than the principal amount stated in such a note. Those cases are not in point.

The defendants cite City National Bank of McAlester v. Edwards (1924), 100 Okl. 202, 229 P. 487, for the proposition, stated in the first paragraph of the syllabus to that case, that "The rule which excludes parol evidence when offered to contradict or vary the terms, provisions, or legal effect of written instruments has no application to collateral undertakings or [to] cases in which the written instrument was executed in part performance of an entire oral agreement." However, insofar as oral agreements affecting written instruments are concerned, the law of that case is established in the court's opinion in an earlier appeal in the same case, involving exactly the same parties and subject-matter [Edwards v. City National Bank of McAlester (1921), 83 Okl. 204, 201 P. 233]. All of the pertinent facts, as well as the holding with respect thereto, are set forth in the second paragraph of the syllabus to the earlier opinion, as follows:

"Where E. executes a promissory note to a bank of which C. is president, and before E. executes the note C., representing said bank, *as an inducement to E. to sign the note to said bank,* represents to E. that a business concern in which E.'s son-in-law is a partner is in a failing condition, and that the bank has advanced all the money to said concern that it can do legally, and that *the bank is liable to lose a certain security held by it on the property of said concern* by reason of bankruptcy proceedings if settlement with the creditors of said concern is not carried through, and that it will be necessary for said bank to advance a certain amount of money to consummate said settlement, and that it was desired that E. sign a note to the bank to cover the amount of said advancement, and that, *if E. would sign said note* the bank would supervise and carry through said settlement and see that the concern was sold out, and that the proceeds of said sale would be applied in liquidation of the debt and note which it was sought that E. execute before any of said fund would be applied to any debt owed to the bank, and that other promises were made as to the handling of said settlement *that would safeguard and procure the liquidation of the note* by E., and upon said promises and assurances E. signed said note, and afterwards the consummation of said [settlement] plan was carried out, and the bank and C. came into possession of the funds from said sale of the business and had charge of the disbursement of the same. HELD that E. could prove the terms of said agreement, and HELD, further, that the bank was in a position in the nature of a trustee for E., and that *E. can hold the bank to a faithful performance of the terms of said agreement.*" (Emphasis supplied)

Concerning the principle stated in the first paragraph of the syllabus to the later opinion and also stated in the earlier opinion, the court said, at page 238 of the Pacific report of the earlier opinion:

"The principle enunciated in the instant case and applied to the facts therein are discussed in 10 R.C.L. 1019, chapter on Contracts, §§ 211, 213, 228, and 230. Section 228 reads as follows:

"'Generally.—The authorities are agreed that a parol contract may be added to a written one, and the two may stand together, though made simultaneously. The same principle declares that the reduction to writing of one feature

of an entire transaction, in part execution thereof, does not preclude proof by parol *of the other features*. Otherwise stated, the rule is that proof is admissible of any *collateral,* parol agreement or *independent* fact *which does not interfere with the terms of the written contract,* though it may relate to the same subject-matter; and whether such *collateral* agreement was made or *independent* fact occurred contemporaneously with or as preliminary to the main contract in writing is quite immaterial. In order, however, to permit parol evidence to be admitted to show an agreement collateral to a written contract, it must appear, according to some authorities, either from the contract itself or from the surrounding circumstances, that the contract is incomplete. And *such a collateral parol agreement is not admissible in evidence when the effect is to alter the scope and meaning of the written instrument.'"* (Emphasis supplied)

In that case, the defendant was purely an accommodation obligor with no direct financial interest in the transaction which was the basic subject-matter of the oral agreement (the handling of the estate of one of the debtors of the payee, a business concern in which the defendant's son-in-law was a partner but in which the defendant had no financial interest); the note sued upon was given by the defendant at the request, and for the sole benefit of the payee, to provide the money to be used by the payee in protecting its interest in the property of that business concern in which the defendant had no financial interest; the defendant had not denied being bound by the provisions of the promissory note in question, but had prayed for an accounting for the proceeds of the sale of such partnership property and proper credit therefor against her obligation under such promissory note; under the oral agreement, the payee covenanted to do something which was separate and distinct from the written contract and the subject-matter thereof (although, in the end, related thereto); the

oral agreement actually did not, in any way or to any extent whatsoever, contradict or vary any of the terms or provisions, or the legal effect, of the written instrument involved. That is not at all the situation involved in the present case.

■ Under the oral agreement pleaded by the defendants in the present cast, none of the interim notes to be executed and delivered by the defendants to the payee at the time of an advance of money by the payee was to be due and payable (regardless of the express provisions of the note concerning the maturity thereof) until the defendants executed a single, long-term, promissory note (payable to the order of the Small Business Administration, or payable to the order of the bank, according to the circumstances) in principal amount equal to the sum of all amounts advanced by the bank to enable the defendants to purchase the three trucks and equipment contemplated by the oral agreement, plus interest. on each amount so advanced by the bank, at the rate, and from the time, specified in the note; and such long-term note was not to be executed by the defendants until all of the customizing work on all three of such trucks had been completed by the defendants and they were ready for utilization in the corporate defendant's business.

Under that oral agreement, as pleaded, the bank would have no right, prior to the completion of all of the customizing work on all three of the trucks *and* the subsequent execution of the contemplated long-term note by the defendants, to demand payment of any such interim note, whether payable, by its terms, on demand or on a date specified therein, because, under the oral agreement as pleaded by the defendants, every interim note given by the defendants to the bank at the time of an advancement of money by the bank would be due and payable—regardless of the express provisions of the note concerning the maturity thereof—on the date of the execution of the single, long-term, promissory note contemplated by such oral agreement.

In other words, under the agreement as pleaded, none of the interim notes contemplated by the agreement was to be due and payable (regardless of the express provisions of the note concerning the maturity thereof) until the defendants could refinance all of the indebtedness evidenced by all of such notes.

Except that the case of Wignall v. Montgomery et al. (1935), 173 Okl. 399, 49 P.2d 163, involved only one promissory note and the oral agreement apparently was made when the note was executed and delivered, the situation in the present case is essentially the same as the situation in that case. Under the oral agreement pleaded in the Wignall case, the note was executed and delivered upon condition that it was not to be paid at the time stated in the note but was to be paid when the maker refinanced the enterprise for which she was borrowing the money from the plaintiff. In affirming the trial court in sustaining the plaintiff's motion for judgment on the pleadings, the opinion holds, in the syllabus thereto:

"Where neither fraud nor mutual mistake is pleaded as a defense to a suit brought upon a promissory note, the plain terms of a promissory note cannot be varied by parol evidence, and pleading that the note was to be paid at a later date than stated in the note constitutes no defense to the action."

A comparable situation was involved in Nelson v. Sapulpa State Bank (1923), 88 Okl. 155, 212 P. 309, and in Brown v. Jones (1943), 192 Okl. 664, 139 P.2d 186, and the ruling thereon was to the same effect. Also, see Union National Bank v. Lavacota Oil & Gas Company (1923), 89 Okl. 258, 213 P. 869.

While it may be that, in the present case, each note involved was not preceded or accompanied by a separate oral agreement with respect to the subject-matter of that particular note, there can be no question but that the provisions concerning maturity of the notes, included in the "comprehensive" oral agreement (as these defendants designate their oral agreement) which preceded the execution of any of the notes were intended to be applicable to each and every one of such notes. So, we perceive no real distinction between the present case and the Wignall case, and, under the principles set forth in the earlier Edwards-City National Bank of McAlester case, the execution of the written instrument in part performance of an entire or "comprehensive" oral agreement, does not except the oral agreement from the operation of 15 O.S.1961, § 137 or the "parol evidence rule," if the effect of the oral agreement is to alter the scope or meaning of the written instrument.

The defendants cite Spradlin v. American Travelers Insurance Company (1961), Okl., 376 P.2d 323, as being to the same effect as City National Bank of McAlester v. Edwards (the later opinion), supra. The Spradlin case was an action by the insurance company, as payee and mortgagee, against the plaintiff in error, Nell E. Spradlin, on a promissory note and a real estate mortgage executed by her at the time she subscribed for some corporate stock of the insurance company to be issued in the names of the defendant and her husband as joint tenants with right of survivorship. The stock was so issued by the company and, at the time of the trial, was still owned by the defendant and her husband. Like the defendants in the present action, she pleaded that, because of an oral agreement made at the same time, the note had not yet become due and payable and the plaintiff's action on the note and mortgage was premature. In the opinion, the court said that "Those instruments were executed merely as a part of the parties' broader, and more comprehensive, oral agreement for the issuance of stock in plaintiff corporation to the Spradlins," and, in effect, held that the situation came within the principle stated in the first paragraph of the syllabus to City National Bank of McAlester v. Edwards (the later opinion), that: " 'The rule which excludes parol evidence when offered to contradict

or vary the terms, provisions or legal effect of written instruments has no application to collateral undertakings or cases in which the writen instrument was executed in part performance of an entire oral agreement."

In the Spradlin case, as in Edwards-City National Bank cases, the entire transaction with the defendant was initiated by the payee and, basically, was for the benefit of the payee. It appears from the opinion that the insurance company was fairly new and was engaged in a campaign to sell all of its authorized stock, with the campaign being under the direct supervision and management of J. D. Norvell, the then secretary of the corporation, and that the campaign was not going very well; that the company wanted to be able to tell prospective subscribers to its stock that Mr. Spradlin was a stockholder because he would (and did) attract several very substantial investors; that Mr. Norvell tried several times, unsuccessfully, to sell some of the stock to Mr. Spradlin for cash, and, finally, on behalf of the company, agreed to take a note for the sale price, and a real estate mortgage as security therefor, with the further oral agreement that the note (which, by its terms, was due and payable on or before a specified date which was long prior to the commencement of the action thereon) would not be "called" as long as Mr. Spradlin was a stockholder in the company or the company arranged the sale of enough of the Spradlin's stock to liquidate the note.

In the present case, it is clear that the over-all transaction covered by the oral agreement in question (for the financing. of a particular business venture of the makers of the notes involved) was not, primarily, for the benefit and purposes of the payee of the notes, but was, primarily and basically, for the benefit and purposes of the makers of the notes, and, since there is nothing in the pleadings to indicate otherwise, it may reasonably be inferred that such over-all transaction was not initiated by the payee of the notes involved.

We recognize the validity of the abstract principle of law (set forth in the earlier opinion in the Edwards-City National Bank of McAlester case and adopted therefrom as the first paragraph of the syllabus to the later opinion in that case, and relied upon by the defendants in the present case) that "The rule which excludes parol evidence when offered to contradict or vary the terms, provisions, or legal effect of written instruments has no application to collateral undertakings or cases in which the written instrument was executed in part performance of an entire oral agreement."

However, we cannot ignore the statutory rule prescribed in 15 O.S.1961, § 137, or the reasons for such statutory rule and the related "parol evidence rule," as stated in Colbert v. First National Bank of Ardmore, 38 Okl. 391, 133 P. 206, 207, and quoted with approval in Posey v. Citizens' State Bank, supra. Nor can we ignore the limitation upon exceptions to the rules just mentioned, stated in the last sentence of Section 228 of the chapter on "Contracts" in 10 R.C.L., supra ("And such a collateral parol agreement is not admissible in evidence when the effect is to alter the scope and meaning of the written instrument"), quoted in the earlier opinion in the Edwards-City National Bank of McAlester case in explaining the application to the facts in that case of the abstract principle of law relied upon by the defendants in the present case.

For these reasons, we do not feel constrained to hold that the situation involved in the present case comes within the purview of the abstract principle of law applied to the facts in the Spradlin and Edwards-City National Bank of McAlester cases and relied upon by the defendants in the present case.

We hold that, because of the provisions of 15 O.S.1961, § 137, supra, the answer of the defendants in the present case does not state facts sufficient to constitute a defense to the plaintiff's petition, and their cross-petition does not state facts suffi-

cient to constitute a cause of action in favor of the defendants, or any of them, against the plaintiff. The trial court did not err in sustaining the plaintiff's demurrer to such answer and cross-petition.

Since the defendants' only attack upon the judgment rendered in favor of the plaintiff and against them after the trial court sustained such demurrers and they elected to stand on their answer and cross-petition is based upon alleged error of the trial court in sustaining the plaintiff's demurrers to their answer and cross-petition, this disposes of any alleged error in such judgment.

Judgment affirmed.

All the justices concur.