## POSEY v. CITIZENS' STATE BANK.

No. 11999—Opinion Filed Sept. 18, 1923.

Rehearing Denied Nov. 27, 1923.

1. Contracts—Oral Negotiations Superseded By Writing—Evidence—Admissibility.

The execution of a contract in writing supersedes an oral negotiations or stipulations concerning its terms and subject-matter which preceded or accompanied the execution of the instrument, in the absence of accident, fraud, or mistake of fact; and any representation made prior to or contemporaneous with the execution of the written contract is inadmissible to contradict, change, or add to the terms plainly incorporated into and made a part of the written contract.

2. Evidence—Parol Evidence Varying Note.

Oral evidence is not admissible to show that a note absolute in its terms is payable only out of a particular fund.

3. Corporations—Subscriptions to Stock of Promoted Company—Validity.

A subscriber to the capital stock cannot defeat his liability on such subscription by showing that the company was not at the time of trial actually engaged in the business for which it was organized.

4. Notes—Renewal as Waiver of Fraud.

If a party is induced by fraudulent acts to execute a note. and afterwards renews the note with full knowledge of the fraud, then such renewal would operate as a waiver of his right to urge the same as a defense against such renewal note.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Wagoner County; Chas. G. Watts, Judge.

Action by Citizens' State Bank against John M. Posey on a promissory note. Judgment rendered in favor of the plaintiff and defendant brings error. Affirmed.

Robert E. Blair, for plaintiff in error.

A. L. Harris, for defendant in error.

Opinion by PINKHAM, C. This was an action brought by the Citizens' State Bank of Wagoner, defendant in error, as plaintiff, in the district court of Wagoner county, against John M. Posey, plaintiff in error, defendant in the court below, on a promissory note made by defendant to plaintiff on October 21, 1916. The parties will be referred to as they appeared in the trial court.

In his amended answer to the plaintiff's petition the defendant admitted that he signed the note, but denied there was any consideration for the execution thereof, denied that the plaintiff was the owner of said note, and denied the same belonged to the plaintiff.

For further answer defendant pleaded that on April 22, 1915, at the special instance and request of one T. C. Harrill, the president of plaintiff bank, and of one J. E. Moore, agent for the State Rural Credit Association, defendant entered into a contract whereby he agreed to take four shares of the capital stock of said company and pay therefor $400, but that said money was not to be paid by defendant until said company should be organized and should become a going concern; that said notes were given to said association by defendant, and were to be held by it and renewed from time to time and carried by said association until it had accumulated a certain amount of assets and should be authorized to do business in the state, and that with this understanding and agreement defendant signed and delivered to them his one note dated April 22, 1915, that defendant's two sons made like contracts and each executed his note for $100, which three $100 notes were subsequently merged into the note sued on in this case.

For further answer defendant pleaded that neither the State Rural Credit Association, nor its successors, known as the Inter State Rural Credit Association, has ever become a going concern or been authorized to do business in the state; that they have never issued any stock to defendant, nor to his sons that defendant has never received any loan from said association and that neither he nor his sons have ever received anything of value for the making of said notes, but same were without consideration.

During the trial of the cause defendant further amended his answer to the effect that at the time the original notes were given which made up the note sued on, the plaintiff had knowledge and notice of all these things.

Defendant further pleaded a settlement and cancellation of the said subscription contract, and notes, made by the receiver of said insolvent association with defendant's attorney in October, 1917.

For reply plaintiff filed a general denial. Upon the issues a trial was had to jury, which resulted in an instructed verdict for plaintiff, and judgment was entered thereon in favor of plaintiff. Motion for new trial being overruled, defendant appeals.

Defendant sets out in his petition in error and in his brief numerous assignments of error. The first proposition discussed is to the effect that parol evidence is admissible to prove absence or failure of consideration in an action on a negotiable promissory note as against any person not a holder hereof in due course. The defendant's brief contains no transcript of the testimony in the court below as required by rule 26 of this court, but an examination of the record discloses that the defendant testified in his own behalf that the $300 note sued upon in this action was given by him to take up three $100 notes which he and his two sons had given for stock in the State Rural Credit Association.

The record further discloses that the subscription for the stock was in writing; that the defendant and his two sons each subscribed for four shares of the capital stock of said association, and agreed to pay $100 per share therefor. The written subscription provides that the first payment of $25 per share be made on the date of the subscription. The first payment, it appears, was not made in cash, but was made by defendant and each of his sons executing a promissory note for $100 each. These notes, it further appears, were all discounted at the Citizens' State Bank, and the makers thereof were each given credit upon their subscription contract for a cash payment of $100 each. None of the remaining notes given by defendant or his sons are involved in this action. The original subscription notes were given in April, 1915. The note sued upon, which was given to take up the three notes which were then long past due, is dated October 21, 1916, 18 months after the subscription contract was made and the notes first given.

It clearly appears from the evidence introduced on the trial that the defendant was permitted by the trial court to prove the exact consideration for the note sued on and also the consideration for the original notes. The consideration was a subscription to the capital stock of the State Rural Credit Association. This was a sufficient consideration for the execution of a promissory note. Producers Nat. Bank et al. v. Elrod, 68 Okla. 248, 173 Pac. 659.

The written subscription referred to provided, in substance:

"I hereby subscribe for four shares of the capital stock of the State Rural Credit Association, Oklahoma City, Okla., for which I agree to pay $100 per share, par value of $50 per share; the first payment of $25 per share to be made on the date of this subscription; the remaining payments I promise

to make in three installments, as follows: $25 per share six months from this date, without interest; $25 per share nine months from this date, without interest; $25 per share fifteen months from this date without interest; payments to be made to the order of the State Rural Credit Association, or such bank or trust company as may hereafter be designated by the company."

This subscription contract was signed by the defendant on the 22nd day of April, 1915, and identical contracts were signed by each of his two sons at the same time.

It is admitted that the defendant made no further payments on his subscription stock, and that he never asked any one to issue him any stock, and it is plain to be seen that under the terms of his subscription contract, which was introduced by him in evidence, he was not entitled to the delivery of stock until the amount of the subscription had been fully paid.

The defendant offered to prove by oral testimony that his subscription and the said note were not to be paid until said association should be a going concern, and that the note should be paid out of money loaned to him by the said association, and his two sons, and that the oral agreement was made between the president of the plaintiff bank and the agent of said association.

The court sustained an objection to this proffered testimony. We think there was no error in the rejection of the testimony. It was an attempt to vary the terms of a subscription to the capital stock of an association by parol evidence. Huster v. Newkirk Creamery & Ice Company, 42 Okla. 440, 141 Pac. 790. In the above case this court held that parol evidence is not admissible to vary the terms of a subscription to the capital stock of a corporation, and further held that a subscriber to the capital stock of a corporation cannot defeat his liability on such subscription by showing that the corporation was not at the time of trial actually engaged in the business for which it was organized.

"The execution of a contract in writing supersedes all the oral negotiations or stipulations concerning its terms and subject-matter which preceded or accompanied the execution of the instrument, in the absence of accident, fraud, or mistake of fact, and any representation made prior to or contemporaneous with the execution of the written contract is inadmissible to contradict, change, or add to the terms plainly incorporated into and made a part of the written contract." McNinch v. Northwest Thresher Co., 23 Okla. 386, 100 Pac. 524; Guthrie & Western Railroad Company v. Rhodes, 19 Okla. 21. 91 Pac. 1119.

"The notes upon their face absolutely and unequivocally bind plaintiff in error to pay same upon maturity. Their execution and delivery is not controverted. If he may show a parol agreement to establish that the contract, instead of being what it is expressed to be upon the face of the notes, is that plaintiff in error shall not be bound to pay, then the very purpose of a written contract is destroyed, for its primary purpose is to create evidence incapable of dispute to establish what the final agreement of the parties thereto is. Although every person is presumed to know the law, a person may sometimes be ill advised thereto and execute a written contract, relying upon parol assurance that it will not be enforced. It is unfortunate, if such a person is deceived and is called upon to perform his contract; but it is better that he lose than that a principle so essential to the certainty and stability of contracts should be destroyed in order to relieve him from the consequences of his indiscretion." Colbert v. First National Bank of Ardmore, 38 Okla. 391, 133 Pac. 206.

The note in suit is complete in its terms. It contains an absolute promise of the defendant to pay $300, 90 days after date (October 21, 1916) to the plaintiff bank, for value received and with interest from maturity at the rate of ten per cent. per annum until paid.

The proof proposed was of an agreement inconsistent with the writing, which in itself is complete and unambiguous. The written promise to pay is absolute. By the proposed proof the promise would have been nullified, and the note converted into an agreement that the sum named should be paid out of money loaned to him by the said association.

"Oral evidence is not admissible to show that a note absolute in its terms is payable only out of a particular fund." Gorrell v. Home Life Insurance Company of Newport, 63 Fed. 371.

The second proposition discussed by defendant is that "plaintiff was deemed prima facie to be a holder of said note in due course, but when it was shown in the trial that the title of the person was negotiated the instrument was defective, the burden was shifted to the plaintiff to prove that it or some one under whom it claimed acquired the title thereto as a holder in due course, which it wholly failed to do."

It is contended by counsel that the State Rural Credit Association and plaintiff promised and agreed that they would carry said notes and not require the defendant to pay same until he received his loan, and that all his subscription should be paid out of the proceeds of said loan, and in that agree-

ment was their promise that they would not negotiate any of said notes, but would hold them until the executory subscription contract should be executed, and then take the amount out of said loan. This, it is argued, they failed to do, and that therefore the title thereto is defective, and in support of this contention defendant cites the case of Besse v. Morgan, 84 Okla. 203, 202 Pac. 1012, a case which defendant says is similar to the case at bar.

It is sufficient to say that in the case referred to by defendant there was evidence of fraud in the procurement of the note by the plaintiff, and that the burden then shifted to the plaintiff to show that he acquired the note without knowledge of any infirmity therein, and in good faith. There is no evidence in this record which would make the case cited applicable to the facts in the case at bar.

It is further contended by defendant that the delivery of said three notes was conditional and for a special purpose, and plaintiff took them with knowledge thereof. The record discloses that this defendant, and his two sons, had in fact made a payment of $100 each on their subscription and had received credit upon the books of the company therefor; the payment had been made by a promissory note discounted at the Citizens' State Bank. These original notes, as before stated, were given in April, 1915, due three months after date. Defendant attempted to show that he was to be made a loan by the association, and that the note was to be paid out of the loan. The loan was not made, but thereafter, the record discloses, on September 22, 1915, and each two months thereafter the defendant paid the interest on the notes and on August 21, 1916, executed the note in suit in renewal of his note and for the notes of his two sons.

In the case of Campbell v. Newton & Driskill et al., 52 Okla. 518, 152 Pac. 1071, it is said in the second paragraph of the syllabus:

"If a party is induced by fraudulent acts to execute a note and afterwards renews the note with full knowledge of the fraud, then such renewal would operate as a waiver of his right to urge the same as a defense against said renewal note."

It is also contended by defendant that the settlement and cancellation effected by the receiver of said insolvent association and defendant discharged defendant from all liability thereunder, including said note, and that the bank had no better title than said association.

It appears from an examination of the record that a receiver had been appointed to take over the affairs of the said association, and that the receiver had communicated with the attorney of the defendant with reference to the defendant's contract of subscription. This alleged settlement, however, had nothing to do with the note sued on in this action. The plaintiff had acquired title to the orginal notes, and a renewal note had been given by defendant to the plaintiff bank long prior to the time when this settlement with the receiver was made; and any settlement made or attempted to be made by the receiver with the defendant could not prejudice or affect the right of the bank, which was then the owner and holder of the note sued on in this case.

After an examination of the evidence and pleadings, we think that the trial court did not err in instructing a verdict for the plaintiff, and that the judgment should be affirmed.

By the Court: It is so ordered.