## BANK OF UNION v. HUNGERFORD.

No. 15581—Opinion Filed Sept. 8, 1925.

### Bills and Notes—Waiver of Defense by Giving Renewal Note.

One who gives a note in renewal of another note, with knowledge at the time of a partial failure of the consideration for the original note, or false representations by the payee or his agent in procuring such note, waives such defense and cannot set it up to defeat a recovery on the renewal note. And where one giving such renewal note either had knowledge of such facts and circumstances, or by the exercise of ordinary diligence could have discovered them, and ascertained his right, it became his duty to make such inquiry and investigation before executing the renewal note, and, **if he fails so to do, he is as much bound as if he had actual knowledge thereof.**

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Garfield County; James B. Cullison, Judge.

Action by the Bank of Union against Charles Hungerford. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Daniel C. Huett, for plaintiff in error.

H. L. Fogg, J. C. Snyder, and McKeever, Moore & Elam, for defendant in error

Opinion by JONES, C. This action was instituted in the district court of Garfield county by the plaintiff in error, as plaintiff, against the defendant in error, as defendant, to recover the sum of $2,000, evidenced by a certain promissory note, together with interest and attorney's fee, and on the trial of same before the court and jury, a verdict was rendered in favor of the defendant and against the plaintiff, and judgment rendered by the court in accordance with said verdict, from which judgment of the trial court the appellant prosecutes this appeal, and assigns various specifications of error upon which it relies for a reversal of the judgment.

The facts, as disclosed by the record, show that on November 29, 1916, the defendant, Charles Hungerford, who resided near the town of Meno in Major county, Okla., purchased $2,000 worth of stock in the Geronimo Motor Company, a corporation then being promoted. The stock was purchased from two agents, Groskins and Blaker, who were stock salesmen for the firm of Shands and Funnell of Enid, the fiscal agents of Geronimo Motor. Defendant alleges that this sale was made in the office

8—111

of the Bank of Meno and that J. M. Cotton, the cashier of the bank, was present at the time of the purchase. The defendant paid for the shares of the stock by executing two promissory notes in the sum of $1,000 each, making one of the notes payable to the Geronimo Motor Company and one note payable to himself, which was indorsed by the defendant, Hungerford, and together with the the other note, delivered to the above said agents as payment for the stock. The record further discloses that in the course of about three or four days thereafter, the defendant, Hungerford, bought additional stock from the same agents, representing the same company to the extent of $10,000, executing his note in each instance as heretofore related.

The defendant alleges as a defense to the note herein sued on; that same was obtained by false and fraudulent representations; that the stock purchased was worthless, and that no consideration passed, and that J. M. Cotton, cashier of the Bank of Meno, was interested in and worked in collusion with the aforesaid agents in the sale of said stock; that some of the notes in question were purchased by the said Cotton for the Bank of Meno; and that by reason of the acts, conduct and knowledge of the said Cotton, cashier of said Bank of Meno, that the said Bank of Meno and likewise the Bank of Union, appellant herein, took said notes with full knowledge of the fact that they were procured by fraud. Appellant urges a number of propositions in its brief, but in our judgment the case may be disposed of under either the 2nd, 4th or 7th paragraph of the petition in error, which raises the question of the sufficiency of the evidence by demurrer, and by motion for judgment, and that the verdict of the jury is not sustained by sufficient evidence and contrary to law.

The principal fraud charged is the representation made to the defendant, Hungerford, at the time that he purchased the first $2,000 worth of the shares of stock, that same could be sold at a profit within six months or less, and a letter was offered in evidence signed by Blaker, one of the agents, addressed to the defendant, Hungerford, as follows:

"If the company, Shands and Funnell, do not notify you that the Geronimo Motor Company will sell to at least $15 per share within four ——— all papers signed this day by Charles Hungerford will be null and void and returned to him."

The length of time upon which this contingency is based is left blank in the letter,

but the evidence establishes the fact that it would not exceed six months. This letter was written on November 29, 1916, and the record discloses that the defendant, Hungerford, did sell $6,000 worth of the shares of stock within a short time after purchasing same; and the Geronimo Motor Company built a factory in the city of Enid, and operated same for a number of years, and until it was burned down in the summer of 1920, and that it went into bankruptcy, which proceedings were closed up in 1921; that the defendant herein had extended the payment of the amount represented by the notes sued upon in this case by repeated renewals, two of which were made after the motor company factory was destroyed by fire, and one renewal after the bankruptcy proceedings had been closed, which is the note sued on in this case, and which was made in 1922, nearly six years after the transaction was had, here complained of.

We think this condition constitutes a waiver of any rights the defendant may have ever had to plead fraud, as a defense to the payment of same. The facts are that the notes had been renewed seven different times, four of which took place after the notes had been assigned to and become the property of the appellant herein, and while the appellee contends that he did not have full and complete knowledge of the fraud, and did not discover the fraud until after the note became due for the last time, the physical facts and circumstances are so overwhelming that any statement to the contrary could not be accepted, and we think the court was in error in submitting the case to the jury. The defendant was bound to have known after the expiration of six months that the representations made to him were at least not going to be fulfilled by the motor company or any of its representatives.

In a recent case by this court, Western Silo Company v. Pruitt, 94 Okla. 154, 221 Pac. 106, a similar question was before the court, and in passing upon same the court said:

"It is true that the defendant contends that at the time of the renewal of the notes he had not yet detected any of the defects complained of, but as heretofore stated in citations from the case of Franklin Phos. Co. v. International Harvester Company, supra, to the effect that where one gives a note in renewal of another note, with knowledge of the defects complained of, or failure of consideration, or false representations made, he waives such defense, or where he has knowledge of such facts and circumstances, or by the exercise of ordinary dili-

gence could have discovered them and ascertained his rights, it becomes his duty to make such inquiry and investigation before executing the renewal note. We think this is a good rule and one which courts cannot afford to disregard. We fully appreciate the position of the average farmer who has been induced to purchase a silo—it is indeed unfortunate—but the courts cannot grant relief for results of unfortunate transactions legally entered into.

"Rules such as relied on by plaintiff in error are the foundation of all contractual relations, and if we create and uphold too many exceptions and provide avenues of escape for every dissatisfied debtor and contracting party, the virtue and force and effect of written contracts would be destroyed." Quoting Franklin Phos. Co. v. International Harvester Co., 62 Fla. 185, Ann. Cas. 1913C, 1247.

And in the case of Farmers State Bank of Belpre, Kan., v. Harrington, 98 Okla. 293, 225 Pac. 705, the court announced the following rule:

"One who gives a note in renewal of another note, with knowledge at the time of a partial failure of the consideration for the original note, or of false representations made by the payee, waives such defense and cannot set it up to defeat a recovery on the renewal note."

"Whatever may be the decisions of other courts, this question has been set at rest by at least two different decisions of this court. * * * In the case of Franklin Phosphate Company v. International Harvester Co. of America, 62 Fla. 185, 57 South. 206, Ann. Cas. 1913C, 1247, the court said:

" 'One who gives a note in renewal of another note, with knowledge at the time of a partial failure of the consideration for the original note, or false representations by the payee, etc., waives such defense, and cannot set it up to defeat a recovery on the renewal note. And where one giving such renewal note, either had knowledge of such facts and circumstances, or by the exercise of ordinary diligence cou'd have discovered them, and ascertained his rights, it became his duty to make such inquiry and investigation before executing the renewal note, and if he fails so to do, he is as much bound as if he had actual knowledge thereof.' "

In the case of Roess Lumber Co. v. State Exchange Bank, found in volume 40, American & English Annotated Cases, on page 327, the Supreme Court of Florida announces the following rule:

"One who gives a note in renewal of another note, with knowledge at the time of a partial failure of the consideration for the original note, or false representations by the payee, etc., waives such defense and cannot

set it up to defeat a recovery on the renewal note. And where one giving such renewal note either had knowledge of such facts and circumstances, or by the exercise of ordinary diligence could have discovered them, and ascertained his right, it became his duty to make such inquiry and investigation before executing the renewal note, and, **if he fails so to do, he is as much bound as it he had actual knowledge thereof.**"

This line of authorities, we think, clearly determines the rights of the parties in this case adversely to the contention made by appellee, and we think the court committed error in refusing to direct a verdict on motion of the plaintiff, and in submitting the case to the jury. There are various other questions raised, a number of which would be interesting to discuss, and which we think constitute reversible error, but we deem it unnecessary to go further, and therefore recommend that the case be reversed and remanded to the trial court with directions to render judgment in accordance with this opinion.

By the Court: It is so ordered.

Note.—See under (1) 8 C. J. p. 445, § 658.