RANDOLPH STATE BANK, Appellee, v. GAIL W. OSBORN et al., Appellees; JOHN ARTERBURN, Appellant.

730

·FEBRUARY· 12, 1929.

*Cook & Cook* and *Thornell, Thornell & Adams*, for appellant.

*Genung & Genung*, for appellee.

DE GRAFF, J.—The note in suit is a renewal note, in the sum of $575, dated October 16, 1924, and payable to plaintiff-bank. The original note signed by these defendants was exe-cuted September 4, 1922. John Arterburn did not personally sign the renewal note, but his name was signed by his wife, Dena. By amendments to the answer it is alleged that, at the time of the execution of the original note, it was orally agreed by and between the signers and the payee-bank that Osborn, the principal, was to sell his house, and that all money received from the sale in excess of the mortgage should be applied by the bank

on the indebtedness evidenced by the note; that Osborn did sell his house, and the net proceeds were in an amount more than sufficient to pay the indebtedness in question, but that it was applied on other indebtedness owed by Osborn to the bank; that the renewal note was executed in ignorance of plaintiff's receipt and wrongful application of this money; and that plaintiff's receipt and wrongful application of the money operated as a release of the answering defendants, sureties on said note.

The plaintiff, in reply, denies the alleged agreement, and alleges that, if it was made, defendants waived it by the execution of the renewal note with knowledge that the property had been sold and the proceeds applied on other indebtedness of Osborn to plaintiff.

The defendant John Arterburn testified with reference to the signing of the first note to plaintiff-bank in 1922, and stated that at that time there were present the bank cashier, Mr. Cruse, Osborn, the maker, Arterburn's wife, Dena, and himself. This note was signed at Arterburn's home. He further testified that, prior to the time the first note was signed, in the presence of all parties, Osborn said that, as soon as he sold his house, he would turn over to the bank the proceeds of the sale to be applied on the note. Cruse was present, and stated that such arrangement was "all right." Arterburn relied upon the promise of Osborn and upon the assent of Cashier Cruse on behalf of the bank to the statement of Osborn, and by reason of said agreement, signed the note. Mrs. Dena Arterburn testified, in substance, to the same facts, and these matters are not contradicted or denied in the evidence of plaintiff.

At the time of the signing of the second or renewal note, as heretofore stated, John Arterburn was not present, and did not himself sign the note. Mrs. Arterburn testified that she signed the second note at the plaintiff-bank, and that she was there by reason of other business with the bank. While she was there, the bank cashier, Cruse, presented her with the note in question, and told her that Mr. Arterburn had requested her to sign her husband's name. Assuming that such a direction and request had been made by her husband to Cruse, she did sign her husband's name. Two or three weeks later, she spoke to her husband about the matter, and at once Mr. Arterburn said: "I never told him so."

Arterburn first learned that the Osborn property had been sold, and for more than the amount of the mortgage, "along in August, 1925." He testified further:

"When I learned that, I went and asked Billie Cruse, the cashier, what he had done with it, and he said he paid it on another note [of Osborn's]. When Osborn told me what he put in the bank, I went and told Cruse that Osborn said he paid that on the note [in suit], and Cruse said, 'He did,' but he [Cruse] put it on another note. * * * I had learned that the house and lot had been sold, prior to October 16, 1924 [date of renewal note], and had a conversation prior to that time in regard to the money received. I asked Cruse if he paid off that note, and he said, 'No,' and I said, 'Why didn't you?' and he said he got about $100 above the mortgage on the premises. He didn't tell me at that time what he had done with it, but it was after Osborn told me about paying it in there that I went to Cruse and asked him about it, and then he said, 'He did;' and I asked him why he did not pay it on the note, and he said he [Osborn] had another note there that he paid it on. I did not know, at the time this renewal note was given, on October 16, 1924, that this six hundred sixty some dollars from the sale of the house had been placed in the bank at Randolph."

Cruse, as a witness for plaintiff, testified that the deposit of the proceeds of the house, $693.55, was made April 29, 1923, to the account of Osborn, and applied in part on an overdraft, and on another and later note than the original Osborn and Arterburn note, by Osborn's direction, and the balance was left in Osborn's account. John Arterburn, according to his testimony, first learned that there were six hundred sixty some dollars over and above the mortgage placed in the plaintiff-bank, after the date of the renewal note, and he was then told that it had been applied on another note. There were some contradictions in his testimony, but it was for the jury to determine what knowledge the defendant Arterburn had at the time the renewal note was given, and whether or not at that time plaintiff had misrepresented the amount that had been received from the proceeds of the sale of the house.

Waiver is the intentional relinquishment of a known right. As pointed out, John Arterburn did not personally sign the note

in suit, and did not know that it had been given, until some time after its execution. The question presented involves more than the mere authority of the wife to sign the husband's name to the note in question. The more pertinent question is one involving the defendants' knowledge of facts and of their resultant rights and intention to relinquish or abandon their known rights. Such knowledge and intention must appear not merely by implication from one circumstance, but from all of the facts and circumstances, as disclosed by the record. It is obvious that the defendant John Arterburn could not be charged with an intent to waive his rights by an act which he did not himself perform, did not at the time know about, and did not previously anticipate or authorize. Nor may it be said that Dena intended to relinquish any right which she did not know about. On the record facts, the jury might have found that the wife's signature to the note was procured by plaintiff's false statement.

The essence of the defense is that plaintiff's agreement was to apply the sale proceeds of Osborn's house upon this indebtedness. It is shown that plaintiff received such proceeds in sufficient amount to pay the indebtedness. The answering defendants were sureties only.

Plaintiff pleads a waiver of the agreement by the giving of the renewal note with knowledge. The answering defendants were not principals, and their defense is not a defense of a principal of partial failure of consideration or affirmance of a fraud-induced contract and waiver of a right to rescind, as in *Bank of Union v. Hungerford*, 111 Okla. 225 (239 Pac. 252); *State Sav. Bank v. Deal*, 200 Iowa 490; *National Bank of Decorah v. Robison*, 199 Iowa 1044; *Larson v. Stanton State Bank*, 202 Iowa 333; *Walnut State Bank v. Mueller*, 202 Iowa 961.

The question is not one of affirmance of a contract voidable for fraud. If the defendants' evidence is true, the renewal note would be without consideration. The facts were pleaded, and the evidence tended to sustain the pleadings. Plaintiff argues that the defendants, at the time of signing the renewal note, were chargeable with not only the knowledge they actually had, but with all that they would have had, if they had availed themselves of the information which they then possessed. If defendants' testimony is believed, they are discharged, and the renewal note would be without consideration. Furthermore, according to

their evidence, plaintiff had falsely represented that it had received only $100 over and above the mortgage. Plaintiff is not in a position to contend that defendants ought not to have believed its statement, and should have inquired further to ascertain whether plaintiff was telling the truth, even though, as John Arterburn said, he considered the statement of Cruse as doubtful.

Plaintiff also argues that appellant is estopped from questioning the validity of the note. The essentials of estoppel are neither pleaded nor proved. It is also suggested by plaintiff  that the evidence of the oral agreement is incompetent to vary the terms of the note. This question is not in the case. The uncontradicted agreement, as testified to by John and his wife, Dena, is collateral to the terms of the writing. It was an inducement to the execution of the note. The oral agreement merely provided the method for the discharge of the note. See *Sutton v. Griebel,* 118 Iowa 78; *Banwart v. Shullenburg,* 190 Iowa 418; *Roberts v. Ozias,* 179 Iowa 1141.

It may be said that the signing and delivery are shown to have been conditional as to the answering defendants, in that the defendant sureties did sign and deliver on condition that the  proceeds of the sale of certain property belonging to the maker of said note should be applied in payment of said obligation. As to all parties other than a holder in due course, the delivery of a note may be shown to have been conditional. *City Nat. Bank v. Mason,* 192 Iowa 1048; Section 9476, Code of 1924 (Section 3060-a16, Code Supplement, 1913).

We are not to be understood as passing upon the facts, but to point out that a jury question was here involved. The motion of plaintiff for a directed verdict as to John Arterburn should have been overruled. The judgment entered as to John Arterburn is—*Reversed.*

ALBERT, C. J., and FAVILLE, MORLING, and WAGNER, JJ., concur.