## PAYSON BUILDING & LOAN SOC. v. TAYLOR et al.

No. 5583.   Decided August 19, 1935.   (48 P. [2d] 894.)

*Delbert M. Draper,* of Salt Lake City, *J. Robert Robinson,* of Provo, and *R. A. Porter,* of Payson, for appellant.

*Christenson & Straw,* of Provo, and *R. W. McMullin,* of Payson, for respondents.

MOFFAT, Justice.

Payson Building & Loan Society, a corporation, plaintiff below and appellant here, filed an action in the district court of the Fourth judicial district of the state of Utah, Utah county, to foreclose a mortgage upon the home of Lee R. Taylor and Ada D. Taylor, his wife. The home was the property of Ada D. Taylor. The mortgage and note sued upon were dated December 11, 1930, and were payable to the State Bank of Payson. At the time this action was brought, the State Bank of Payson was in charge of J. A. Malia, state bank commissioner, and was in process of liquidation. The defendants Ada D. Taylor and Lee R. Taylor, filed separate answers. The answers admit the execution of the note and mortgage, and then allege that they were renewals of a previous note and mortgage executed on the 11th day of December, 1925. It is further affirmatively alleged by the answers that there was no consideration for the note or mortgage, and that the instruments were executed under duress.

The substance of the allegations constituting the duress is: That on or about the 4th day of December, 1925, G. M. Whitmore was vice president of the State Bank of Payson and T. F. Tolhurst was president of said bank; that these men told the defendants that Lee R. Taylor, who had been

cashier of the bank, had committed a crime against the laws of the state of Utah; that Lee R. Taylor had made false statements and reports to the state bank commissioner, and that, unless the defendants signed a note in the sum of $2,500 and secured the same by a mortgage on their home in Payson, Lee R. Taylor would have a criminal complaint filed against him; that Ray Monsen had become cashier of the State Bank of Payson and secretary and treasurer of the Payson Building & Loan Society and continued in those capacities until the State Bank of Payson closed in December, 1931; that Otto B. Erlandson was president of both the State Bank of Payson and the Payson Building & Loan Society; that these men assigned the note and mortgage in question to the Payson Building & Loan Society when they knew about the circumstances constituting the duress which brought about the execution of the note and mortgage originally given and renewed.

Demurrers to the answers of defendants Taylor and motions to strike certain allegations from the answers were filed. The demurrers were overruled, and the motions to strike denied. The default of the defendant J. A. Malia, bank commissioner, was entered. No appeal has been taken on behalf of the bank commissioner. The case was tried to the court, sitting with a jury, upon the issues made between the plaintiff and the defendants Lee R. Taylor and Ada D. Taylor. The court submitted certain interrogatories to the jury for answer. All the interrogatories were answered by the jury unfavorably to the plaintiff. The court adopted the findings made by the jury as the basis for his findings and the entry of judgment in so far as they were found by the jury. Judgment was entered in favor of the defendants Lee R. Taylor and Ada D. Taylor and against the plaintiff, whereby it was adjudged and decreed that the note and mortgage sued upon were obtained by fraud and duress and without consideration. The court ordered the note and mortgage annulled and canceled. The Payson Building & Loan Society appeals.

There was no error in the ruling of the trial court in denying the motion to strike. As to the demurrer, it is urged that there are no allegations in the complaint showing that the State Bank of Payson was authorized to make the assignment of the note and mortgage or ■ that the Payson Building & Loan Society knew anything about the alleged duress. We think the allegations sufficient to ward off the attack of the general demurrer. The record reveals a community of interest and identity of purpose existing between the Payson State Bank, the Strawberry Investment Company, and the Payson Building & Loan Society. While not all of the officers of each of the corporations are disclosed, those that are disclosed were identical, and especially as to management were the same persons. The Payson Bank contained the office for all of them. The vaults were the depositaries of all funds, records, securities, and paraphernalia of all of them, and the bank officers transacted all of the business. There were three corporate entities, but essentially one business. The Strawberry Investment Company was the waste basket; the Payson Building & Loan Society was the transfer and overflow for the convenient placement of funds and securities.

While the answers are separate, the allegations contained therein are of the same substantive import. The allegations are that the defendants were threatened by the bank officers by stating that Lee R. Taylor had committed a crime by making false reports to the state banking department and that, unless the note and mortgage of December 11, 1925, were signed, he would be arrested and prosecuted on a criminal charge. The same substantive statements were either made or referred to as being understood between the Taylor and the cashier of the bank at the time the renewal note and mortgage were executed.

It is argued that because of the payments of interest defendants are estopped to deny the validity of the note and mortgage. *Eash* v. *Pence,* 121 Okl. 7, 246 P. 1091. There

are no pleadings relating to estoppel, and as to Ada D. Taylor the evidence is undisputed that she knew nothing about the payment of interest by her husbnd and that she paid none herself. She is the owner of the mortgaged property.

It is alleged that the defendants were overcome with great fear by reason of the threats (statements of Tolhurst and Whitmore), and their judgment and power of will were coerced and subdued into believing that Lee R. Taylor would be arrested and imprisoned because of such statements, and that to avoid such prosecution and imprisonment and for no other purpose or consideration did they execute the note and mortgage. A careful examination of the whole record, including a study of the testimony of all the witnesses, impresses us that the evidence fully supports the allegations of the complaint, and the findings of the court and jury are in accord therewith.

The statements made to the defendants that Lee R. Taylor would be arrested and imprisoned with the consequent disgrace and humiliation that would result from such threatened arrest and imprisonment was sufficient to put the husband and wife in fear and to cause them to act contrary to their respective wills and inclinations. Such being the allegations and the proof, a case of duress is made out sufficient to avoid the validity of the executed instruments. *Graves* v. *O'Brien*, 111 Kan. 320, 207 P. 198, 202; *Thompson* v. *Niggley*, 53 Kan. 664, 35 P. 290, 26 L. R. A. 803. The former case quotes the following from the syllabus of the latter:

"Written securities, extorted by means of threats of prosecution for criminal offenses of which the party threatened was guilty in fact, but which were in no manner connected with the demand for which compensation was sought may be avoided by the parties executing them, not only in the hands of the original payee, but of his assignees having notice of the circumstances under which such securities were taken."

The question of consideration in the instant case is so connected with the statements or duress or menace or fraud, whichever word may more accurately characterize the words and acts of the officers of the institutions who were the apparent beneficiaries of the executed documents, as to be either determined or become immaterial once the duress has been found. No fixed standard may be arbitrarily set up that will determine what facts will in every case establish duress, fraud, or menace sufficient to avoid an instrument. What might be sufficient in one case might fail in another. All the assignments of error except those relating to the demurrer and motion to strike are intimately related to the question of sufficiency of the evidence and instructions of the court, or that there is not sufficient evidence as to certain specific matters that are all subsidiary to the main issue. Practically every issue, controlling and subsidiary, was submitted by special interrogatories to the jury. The court adopted the findings of the jury.

The trial court and the jury, having seen and heard all the witnesses, may have believed some and disbelieved others. It is evident that generally they believed the evidence supporting defendants' side of the cause. There is evidence to support the answers made to the interrogatories submitted to the jury, and we think the jury was not misled by the interrogatories. The evidence supports the findings and the findings the judgment of the court.

In the final analysis of the matter, the controlling factor in a case of this character is the determination as to whether or not the defendants were induced to execute the instruments by reason of the statements relating to a threatened prosecution of Lee R. Taylor. The matter of notice to the plaintiff as to the circumstances under which the note and mortgage were obtained was definitely determined by the court and jury. There was sufficient evidence to support that finding.

Finding no reversible error, the judgment should be affirmed. Such is the order. Respondent to recover costs.

ELIAS HANSEN, C. J., and FOLLAND and EPHRAIM HANSON, JJ., concur.

WOLFE, Justice (concurring specially).

It is not necessary in setting up duress in the form of a threatened criminal action to set out that the threatener had recited as a basis of his threat such facts which would amount technically and legally to a crime; if, on accurate and detailed analysis, it is found that the acts he was said to have done would not themselves constitute a crime, they may nevertheless be sufficient to invest the mind of the person threatened with such fear as not to make his choice of contract a free one. The modern doctrine seems to be well stated in the case of *Wilbur* v. *Blanchard*, 22 Idaho 517, 126 P. 1069, 1071, quoting from the Wisconsin case of *Galusha* v. *Sherman*, 105 Wis. 263, 81 N. W. 495, 47 L. R. A. 417, as follows:

"The making of a contract requires the free exercise of the will power of the contracting parties, and the free meeting and blending of their minds. In the absence of that, the essential of a contract is wanting; and if such absence be produced by the wrongful conduct of one party to the transaction, or conduct for which he is responsible, whereby the other party, for the time being, through fear, is bereft of his free will power, for the purpose of obtaining the contract, and it is thereby obtained, such contract may be avoided on the ground of duress. * * * The question in each case is: Was the alleged injured person, by being put in fear by the other party to the transaction for the purpose of obtaining an advantage over him, deprived of the free exercise of his will power, and was such advantage thereby obtained? If the proposition be determined in the affirmative, no matter what the nature of the threatened injury to such person, or his property, or the person or liberty of his wife or child, the advantage thereby obtained cannot be retained. * * * The law no longer allows a person to enjoy, without disturbance, the fruits of his iniquity, because his victim was not a person of ordinary courage, and no longer gauges the acts that shall be held legally sufficient to produce duress by any arbitrary standard, but holds him who, by putting another in fear, shall have produced in him a state of mental incompetency to contract, and then takes advantage of such condition, no matter by what means such fear be caused, liable at the option of such

other to make restitution to him of everything of value thereby taken from him."

In 17 A. L. R. 336, a number of cases are cited which hold that the guilt or innocence of the person threatened is not controlling. There are a few cases which hold that threats of criminal prosecution on an innocent person do not constitute duress. These latter cases will be found in the same note, 17 A. L. R. 336, at page 339. In all the cases in the note, however, it appears that the person had done some acts which did have or might have the complexion of a crime, and that when threatened, he was under the honest belief that his actions constituted a crime. Even in the case of a person who was accused of being short in his accounts, although afterward found not to be, such a person believed that he was short in his accounts and believed himself amenable to prosecution. And, in the case of a person who had removed a chattel from the county upon which there was a chattel mortgage, such person believed he was guilty of a crime in so doing, even though he had not the intent to defraud the mortgagee and the statute required such intent as an ingredient of the crime.

It is not necessary in this case to decide whether, if a person were accused of a crime constituted by the doing of certain acts which he never did and knew he never did, such could be the basis of duress. It may well be a person might even fear the results of an arrest on his reputation. Unfortunately, reputations built up over a period of years may be materially harmed by arrests based on false charges because the truth is slow in catching up to the falsehood. In this case, however, we have in the answer enough facts stated to reveal the nature of the crime the prosecution of which Taylor claimed he was threatened with. The allegations imply that he believed that he might have been guilty of a crime, and fear was induced in his mind that his reputation as a citizen and churchman would be materially injured if he were prosecuted for it. It appears, therefore, that the answer put the plaintiff upon notice of the type of

crime, the prosecution of which Whitmore and Tolhurst are alleged to have threatened Taylor. It furthermore alleged that the Taylors were fearful of the said prosecution and of its consequences to them, and that, because of said fear and not of a free choice, they executed the first note and mortgage on the 11th day of December, 1925. The answer therefore stated a good defense.

The plaintiff assigned as errors certain instructions of the court given to the jury in order to guide it in finding on certain special issues submitted to it. In an equity case, a jury verdict is advisory. The findings of the jury on special issues submitted are also advisory. The court may adopt all or none or some. 21 C. J. § 735, p. 594; *Goldman* v. *Rogers*, 85 Cal. 574, 24 P. 782. If the court gives wrong instructions for the guidance of the jury, it is presumed that the jury followed said instructions. And it may be that, if the instructions are such that the jury could have found otherwise on the special issues had the instructions been correct and the court adopts the special findings of the jury, then the judgment of the court supported by such findings will be set aside for the reason that jury findings arrived at upon erroneous instructions were the persuasive influence on the court in making its findings. It may be that, where the conscience of the court is satisfied with the verdict of the jury upon an issue improperly directed, and such improper direction includes prejudicial error, the judgment will be set aside. But these questions need not be decided because we do not think the instructions were such as to mislead the jury. Complaint is made in assignment No. 6, that the court as its finding No. 1 adopted special findings by the jury which were in some cases based on a failure to give any guiding instructions and in other cases upon interrogatories which presumed certain facts which the jury itself was under duty to find. Complaint is made that nowhere in the instructions did the court define what a threat must be in order to constitute a defense on the ground of duress or what was the nature of the crime the

prosecution of which defendant was threatened with. Under the interrogatories, this was not necessary. The jury was simply asked to find whether Tolhurst and Whitmore made threats to the Taylors that, if they did not sign the note and mortgage, Lee Taylor would be prosecuted on a criminal charge for making false statements and reports to the banking department of the state of Utah. These were simple interrogatories. It was quite unnecessary, in fact it would have been confusing, for the jury to have instructions on the type of reports or the nature of the crime or what specific reports and false statements were referred to as having been made by Taylor to the banking department.

Interrogatories Nos. 7 and 8 asked the jury to find whether Ray Monsen had threatened the Taylors with instituting against them "the criminal prosecutions theretofore threatened" in order to procure the signing of the renewal note and mortgage of December 11, 1930. Certainly these interrogatories, by including the quoted matter, did contain an assumption that criminal prosecutions had been threatened, and therefore assumed something which the jury was under duty to find. However, under all the interrogatories we believe that the jury could not have misapprehended because they were especially asked in a previous interrogatory to find whether there were criminal prosecutions "theretofore threatened."

Interrogatories Nos. 9 and 10 are subject to the same infirmity in that they ask the jury to determine whether the Taylors would have signed the renewal note and mortgage "had it not been for the threats made or renewed by Ray Monsen." Here again I believe that the jury could not have been misled into thinking that it was incumbent upon them to find that threats had been made or renewed by Ray Monsen because they were especially asked to find in interrogatories Nos. 11 and 12 whether the Taylors received anything of value for signing the note and mortgage dated December 11, 1925. It is true that there could have been a

consideration without the Taylors receiving anything of value, but whether or not there was a consideration for the Taylors signing the mortgage, if it was signed under duress, it would be set aside. The fact that Taylor received 25 shares in the Strawberry Investment Company would not prevent the setting aside of the note and mortgage if they were obtained by duress. The shares were evidently valueless. The iniquity of putting one's mind in a state of fear so as to compel him to sign a contract is not assuaged by the giving of a purported consideration which may be intended as a cloak. Appellant complains that there is no evidence in the record that Whitmore and Tolhurst have made any statement to the Taylors which amounted to duress, and therefore finding No. 8, to the effect that Whitmore, on behalf of the State Bank of Payson, told the Taylors that Lee R. Taylor had made false reports and statements to the state banking department and had thus committed a crime against the state of Utah and was liable to be prosecuted and imprisoned, was without support. Certainly an examination of the record shows otherwise, and the jury so found. Therefore there is no error in the court's thus finding. Finding No. 9, wherein the court found "that the defendants, Lee R. Taylor and Ada D. Taylor were overcome with great fear because of the threats that were alleged to have been made, and that the judgment and power of will of said defendants, Lee R. Taylor and Ada D. Taylor, were coerced and subdued, and that in order to prevent criminal prosecution and imprisonment they executed the note and mortgage on December 11, 1925," is supported by the evidence.

Complaint is made that the court erred in making its finding No. 10, wherein it found that the interest payments made upon the note executed in 1925 were made for the reason of fear and on account of threats of criminal prosecution by Whitmore and Tolhurst. The proof in support of this finding is not so clear. But from what follows I do not think the finding material. It could only be material

to show excuse from laches or to show that a waiver of his rights was not intended. The greatest doubt that I have in regard to this case relates to the question of whether the Taylors were not guilty of laches in that they did not sooner bring a suit to have the note and mortgage canceled, or whether by payment of interest and renewal of the note and mortgage they did not waive their right to have it declared null. For five years interest was paid on the note, and on December 11, 1930, it was renewed. True, the jury found that the renewal was induced by threats of Monsen. On the 29th day of June, 1931, the note and mortgage were assigned to the plaintiff. There was evidence that Lee R. Taylor protested against this assignment because of the promise that he would not have to pay the principal and that the note and mortgage would repose in the custody of the bank. It has been somewhat difficult for me to see why this is not a case where equity should say to the defendants, "You have not moved soon enough." I am aware that some of the cases hold that "it is not incumbent upon one who has thus been defrauded to go into court, and ask relief, but he may abide his time, and, when enforcement is sought against him, excuse himself from performance by proof of the fraud." *Hart* v. *Church,* 126 Cal. 471, 58 P. 910, 913, 77 Am. St. Rep. 195. On the other hand, in the case of *A. H. Averill Machinery Co.* v. *Taylor,* 70 Mont. 70, 223 P. 918, 921, it was stated:

"If a party, who relies upon menace to relieve him from the consequences of his contract, remains silent for an unreasonable time after the removal of the menace, he may be held to have elected to waive the wrong and ratify the contract; but it is the general rule that to constitute an affirmance the conduct of the injured party must be such as to indicate an intention to condone the wrong and a purpose to abide by its consequences, and the influence of the menace must be removed before the conduct becomes voluntary."

The court appeared to recognize that a defense based on fraud or duress could be avoided because of laches, but stated that the defense was not attacked by special demurrer, nor was the defense of laches contained in the re-

ply. See also, *Wood* v. *Kansas City Home Telephone Co.*, 223 Mo. 537, 123 S. W. 6, where it was stated that a rescission of the contract on the ground of duress must occur when the duress is removed. In that case duress was used as a defense.

In the instant case the circumstances under which the interest on the note was paid might be such as to have excused Taylor from bringing an action to cancel the note and mortgage as long as the same was held by the bank, because, from the evidence, it appears that the Taylors were told that the principal would never be collected and that they were for the purpose only of making a showing of assets. It is not necessary in this case to consider what the consequence of a practiced deception on the part of both Taylor and the bank might be upon the cause of action of the appellant. It is not necessary to determine whether, if it were an effort to deceive the bank commissioner, the court should apply the principle which holds that, where parties enter into an illegal contract, the law will leave them where it finds them, or whether the court, upon having it revealed by the evidence that the motive for which the note and mortgage were executed was to deceive as to the assets of the bank, would simply ignore the motive and treat the case as if it were for legitimate purposes and decree foreclosure. See *Security National Bank of Tulsa* v. *Bohnefeld*, 131 Okl. 66, 267 P. 631, where it was held that the officers of the bank had no authority to bind the bank by such promise. This question may not be decided because neither the defendant nor the plaintiff have made any point of it, but the representation that the principal would not be collected may show a sufficient excuse for Taylor not bringing action to annul at least before the plaintiff took over the note. If he was led to believe it would ultimately be returned to him, he might have sufficient reason for not bringing an action. By such representations he was lulled into inaction. If that were true, it would be only when he found that the note and mortgage were assigned to the

plaintiff that he would be under duty to move, if at all, to remedy his position because at that time he did know that the security was no longer under the control of the bank and could thereafter not rely upon the representation that it would be returned to him. The suit was brought on March 11, 1933, nearly two years after the note and mortgage were assigned to the plaintiff. Without determining that a person who claims to be defrauded or to have made a contract under duress may wait indefinitely until he is sued upon the note to make a defense, I am of the opinion that in this case it cannot be said as a matter of law that the Taylors were guilty of laches in waiting for a period of nearly two years until a suit was brought to foreclose in order to interpose the defense of duress. More concerning laches and waiver will be said in connection with another assignment of error.

From what has been said, finding No. 10 is immaterial, because, even though the interest payments were not made by reason of fear, that could not avail the plaintiff unless it showed laches or an acquiescence or an intention on the part of the defendant Taylors to waive the wrong and treat the note and mortgage as being a proper one. I am unable to satisfy myself that payment of the interest under the representation that the note and mortgage would be delivered back to them without payment of principal works any of these results.

Appellant complains of the finding of fact No. 13 wherein it is found that the notes and mortgage in question were executed to the State Bank of Payson without any consideration whatsoever. Enough has been said in answer to this assignment. The fact that Taylor was a director and cashier of the bank and therefore may have derived benefit by creating an asset in favor of the bank would not prevent him from defending on the ground of duress if he was impelled to create the asset by fear of consequences. A person who is impelled to enter into a contract under duress and without the freedom of choice cannot be told that he must

let that stand as his contract because, if it stands, he will indirectly benefit by it. Even where a person owes another money—a very ample consideration for a note and mortgage—if they are obtained by duress, they will be set aside allowing the old debt to stand in its unsecured state.

While the evidence is not so clear as it might be that the plaintiff had notice of the circumstances under which the note and mortgage were given, there is sufficient evidence to support the finding that Ray Monsen, cashier of the bank and as secretary and treasurer of the plaintiff, had notice of such circumstances. Certainly, his knowledge would be the knowledge of the plaintiff. The only way a corporation has knowledge is by the knowledge which its officers have. No one can speak into the ear of an abstract entity. It is only through human beings that a corporation knows. The jury found that Ray Monsen had threatened Taylor with an institution of criminal prosecution in case the latter did not renew the note. Certainly it must have found, therefore, that Monsen knew of the reason why the Taylors executed both the original and the renewal note and mortgage.

In assignment No. 18 appellant complains of the court's instruction No. 5 given to the jury. This instruction pertained to consideration. Sufficient has been said to show the consideration was not really material. It was a question as to whether the Taylors really entered into an unavoidable contract.

Appellant urges that the defendants waived their right to defend on the ground of fraud or duress by renewing the original note and paying the interest on the same and by bringing no action or proceeding within a reasonable time to set the note and mortgage aside. We have already touched on some phases of this argument. To my mind it is the most serious question in the case.

It was held in the case of *Eash* v. *Pence*, 121 Okl. 7, 246 P. 1091, that where a payor of a promissory note, alleged to have been made by duress, pays interest thereon long after

the making of the same and secures an extension of the payment of the principal, such acts constitute a ratification of the contract, and such party is thereafter estopped from escaping liability by proving the note was obtained by duress. In a great many other cases there is ample authority to the effect that the renewal of a note amounts to a waiver of a right to have the note set aside on the ground of duress. *Smith* v. *Smith,* 4 Idaho 1, 35 P. 697. *Howland* v. *Scott,* 117 Cal. App. 275, 4 P. (2d) 200, where it was held that, where a maker by executing renewal notes after discovering facts concerning fraud and permitting the holder to surrender the original notes waived the alleged fraud. *American National Bank of Oklahoma City* v. *Jorden,* 123 Okl. 151, 254 P. 706; *Bank of Union* v. *Hungerford,* 111 Okl. 225, 239 P. 252; *Farmers' State Bank of Belpre* v. *Harrington,* 98 Okl. 293, 225 P. 705; *Western Silo Co.* v. *Pruitt,* 94 Okl. 154, 221 P. 106; *Posey* v. *Citizen's State Bank,* 93 Okl. 266, 220 P. 628; *Tisdel* v. *Central Savings Bank & Trust Co.,* 90 Colo. 114, 6 P. (2d) 912. The above cases were cases of fraud and not duress. Cases of fraud are mostly a matter of fait accompli. The acts constituting fraud had been completed and the situation fixed so that an action could be brought as soon as it was discovered. In the case of duress based upon threatened prosecution of crime, the duress may continue because the person threatened may have the same hesitancy in bringing an action in setting up the threatened criminal prosecution as he would in resisting the importunities practiced to get him to execute the note. However, it should be noted that in all events he would have to disclose the threats when he made a defense. A person may be under fear of threatened prosecution, at least until the statute of limitations barred all possibility of such prosecution, and even after that, where he feared the consequences of an arrest on his reputation, though he might know in law that he could successfully defend such threatened criminal prosecution. Fear may therefore be sufficient in the case of duress to excuse nonaction for a

considerable length of time. Waiver, ratification, and acquiescence require an intent to do so. Laches need not ordinarily involve an intent, except as intent to abandon a right may be inferred from delay. Circumstances which would negative the intent to waive may show that what would ordinarily constitute a waiver is not a waiver. Where fear of prosecution may have continued and where, as in this case, there is evidence that the renewal note was obtained by a further suggestion of an instituted prosecution, and where, as in this case, it appears that there was reason to believe that the note and mortgage would never be sued upon but would be returned there may be sufficient at least to negate the intent to waive which would ordinarily be implied by the payment of the interest or the renewal of the note and mortgage. And these circumstances may have been sufficient to negative any intent to waive the right to have the said note and mortgage declared null up to the time that the note and mortgage were assigned to the plaintiff. After that nothing was done which could be construed as a waiver. There was simply a failure to pay interest and a failure to bring an action to declare null the instruments. Here the question of laches and not a waiver enters. Were the defendants Taylor guilty of laches when for nearly two years after the assignment they brought no action to rescind the contract but waited until foreclosure was prosecuted and then defended? If the case of *Hart* v. *Church,* supra, lays down the correct principle of law, that a person against whom duress has been practiced may, subject to the peril of having the rights of an innocent party intercede, abide his time, and, when enforcement is sought against him, excuse himself from performance by proof of duress, then the defendants in this case cannot be accused of laches. Without deciding whether such is the law, I think that a case of laches has not been made out by failure of the defendants to move for nearly two years after the assignment of the note and mortgage to the plaintiff. Laches has been defined to be "the neglect, for an unreasonable and unex-

plained length of time, under circumstances permitting diligence to do what in law should have been done." 21 C. J. p. 210, § 211. "It is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence in them." In a great many cases courts of equity before applying the doctrine require some element of disadvantage to another, because of the delay, to be shown. Laches has been defined to be "negligence in the assertion of a right," *Riley* v. *Blacker,* 51 Mont. 364, 152 P. 758, 759; "unreasonable delay in enforcing a known right," *State* v. *Brooks-Scanlon Lumber Co.,* 122 Minn. 400, 142 N. W. 717, 719; "in not doing something which a party might do and might reasonably be expected to do in the vindication of his right," *Troll* v. *St. Louis,* 257 Mo. 626, 168 S. W. 167, 175; "such delay * * * as will warrant the presumption that the party has waived his right," *O'Neal* v. *Moore,* 78 W. Va. 296, 88 S. E. 1044, 1048; *Snyder* v. *Charleston, etc., Bridge Co.,* 65 W. Va. 1, 63 S. E. 616, 131 Am. St. Rep. 947; "such neglect or omission to do what one should do as warrants the presumption that he has abandoned his claim and declined to assert his right," *Patterson* v. *Chrisman State Bank,* 55 Ind. App. 331, 102 N. E. 880, 881; *Wissler* v. *Craig,* 80 Va. 22; "negligence by which another has been led into changing his condition with respect to the property or right in question, so that it would be inequitable to allow the negligent party to be preferred upon his legal right to the one whom his negligence had misled." *Hughes* v. *Wallace* (Ky.) 118 S. W. 324, 326.

It seems to me that the courts have somewhat confused laches and estoppel. The last definition involves more the element of estoppel than the element of unreasonable delay, because it involves a change of position during the delay. I am unable to say under all the circumstances that the lower court should have applied the equitable doctrine of laches. It appears to me that the proper case for the application of the doctrine of laches is one where the facts and circumstances clearly show that the person who asserts

320

a right by way of defense or otherwise had so long neglected the right as to lead to the inevitable conclusion that he did not care to assert it. Certainly, if the delay is long enough, the party should be precluded even though no disadvantage has accrued to the party against whom the laches is asserted. I cannot say under all the circumstances of this case that the Taylors were guilty of such delay as to infer abandonment or waiver of their right to have the note and mortgage declared null or that any of their acts were such as not to be explainable along other lines not consistent with an intent to waive such right. I therefore concur.