Florence LAMPKIN, Appellee,

v.

Rex B. HAWKS and Jack L. Freeman,
Appellants.

No. 46723.

Court of Appeals of Oklahoma,
Division 2.

Nov. 19, 1974.

Rehearing Denied Dec. 11, 1975.

Certiorari Denied Feb. 25, 1975.

Released for Publication by Order of Court
of Appeals Feb. 27, 1975.

Charles B. Lutz, Jr., Speck, Philbin,
Fleig, Trudgeon & Lutz, Oklahoma City,
for appellee.

John Connolly, Oklahoma City, for appellants.

BRIGHTMIRE, Presiding Judge.

Florence Lampkin brought suit against
the maker (Americare National, Inc.) and
seven accommodation makers of a $5,000
promissory note she held dated May 31,
1967, and payable to bearer three months
later on August 31. The note was not
paid. This lawsuit was filed. The two appealing defendants and three other individual makers answered admitting execution
of the note but to avoid liability asserted it
was executed on the condition that plaintiff—a joint venturer with defendants to
construct a nursing home—"would never
require the payment of said note by defendants" but it "would be retired wholly
and solely out of construction money to be
borrowed by the Plaintiff, and other joint
venturers" to finance the project.

The trial court granted plaintiff a summary judgment against five defendants,
and two of the makers—Rex B. Hawks
and Jack L. Freeman—appeal challenging
the propriety of the pretrial adjudication.

Underlying the trial court's judgment was the conclusion that proof of defendants' conditional note execution defense, based as it was on an oral understanding, would be blanked out at trial by the parol evidence rule which prohibits verbal attempts to vary or contradict terms of the written note. Of course it is this conclusion that defendants criticize. If it is correct then the judgment must stand, because no material provable issue exists for trial so that the note stands enforceably ripe for judgment in favor of the holder under Oklahoma District Court Rule 13, 12 O.S. 1973 Supp. Ch. 2, App.

■ Defendants acknowledge the general rule regarding the inadmissibility of oral evidence of precontractual negotiations or stipulations to vary or contradict unambiguous written agreements, but say there is an exception thereto which controls the defense pleaded here, namely, that when a promissory note is but a written part performance of a larger more comprehensive oral agreement, then evidence to prove the entire agreement is admissible without violating the parole evidence rule. This theory comports with the rationale of a long line of cases reaching back to at least Edwards v. City Nat'l Bank, 83 Okl. 204, 201 P. 233 (1921); Spradlin v. American Travelers Ins. Co., Okl., 376 P.2d 323 (1962); cf. Kasner v. Antene, Okl., 483 P.2d 1370 (1971) turning on a lack of consideration finding.

■ Actually a close look at these cases discloses the *Edwards* principle is not an "exception" to the general parol evidence rule at all, but simply an affirmation of another, namely, that one can "prove" an oral contract by parol evidence (as distinguished from attempting to contradict or vary the terms of one). So the specific question posed by the facts of this case is this: Do the answers of defendants allege a larger comprehensive oral agreement as a part performance of which the note in

question was executed? If they do then the court erred in granting a summary judgment, otherwise not.

■ Plaintiff in defense of the summary judgment contends the *Edwards* doctrine has no application here, but that defendants' allegations bring· them squarely within the ambit of 15 O.S.1971 § 137 [1] as applied in another line of cases which prohibit notemakers from escaping liability on the ground that when the note was executed the promisee orally agreed the promisors would not be called upon to fulfill their promise. Gillis v. First Nat'l Bank, 47 Okl. 411, 148 P. 994 (1915); Posey v. Citizens' State Bank, 93 Okl. 266, 220 P. 628 (1923); and White v. Oliver, 173 Okl. 559, 49 P.2d 147 (1935).

*Gillis* like *White* is quite distinguishable from *Edwards* in that its facts lend themselves to a classical application of the parol evidence rule. There the defense was that the makers "executed [the promissory note sued on] upon the representations of the cashier of the plaintiff bank that they would not be called upon to pay the same." Under these circumstances the court first noted the applicability of the "very general" parol evidence rule and then spent the remainder of the opinion stressing the fact that the alleged agreement was not binding upon the bank because the cashier had no authority at all to make it.

On the other hand *Posey* poses a problem in that the operative facts described in the opinion make it difficult for us to distinguish them from those in *Edwards*—a case which *Posey* did not cite or discuss though it had been published two years earlier. If, however, one were to say they are distinguishable because *Edwards* involved a rather complicated means of the bank aiding an insolvent customer to settle with its creditors whereas *Posey* related to a capital stock subscription contract, he would still be left with the task of reconciling *Posey* with *Spradlin* a much more

1. "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument."

recent case—one which not only involves a stock subscription agreement but expressly invokes and applies the *Edwards* doctrine. To escape the apparent disharmony in our law—or at least to effect a resolution of this case—we will consider as controlling either the *Gillis* principle or the *Edwards-Spradlin* rule depending on what issues we find to be raised by the pleadings.

■ Plaintiff's petition, of course, was brief in alleging that on May 31, 1967, the several defendants made, executed and delivered to her a promissory note in writing which contained a promise to pay bearer $5,000 on August 31, 1967. She attached the note and said defendants were in default and asked for a $5,000 judgment plus interest and costs.

Six of the seven individual defendants filed answers admitting execution of the note but five alleged in substance (1) that plaintiff joined with them in a joint venture to build and operate a nursing home and that defendants' endorsements were to aid in obtaining further financing for the construction of a nursing home, to evidence an (unspecified) oral agreement, and to "protect plaintiff" in case she died, and it was understood and agreed to by all at the time that defendants would not be liable on the note, but plaintiff would look solely to the receipts of the corporation for payment of the note; (2) they allege the $5,000 went to the corporation, deny receiving any of the money themselves and conclude their signatures on the note were without consideration.

There was some disagreement among the defending makers though. One, Lester Leaf, admitted he was liable to plaintiff on the note as an accommodation maker for one-eighth of the obligation and his co-signers were liable for the other seven-eighths. Leaf said he had paid $801.71 on the note and that two other makers—Rex Hawks and Jack Freeman—had paid $54.17 each, making a total of $855.88.

Defendant Quinn, another maker, in his answer denied signing the note and said he received none of the $5,000 and upon the information he had he believed that plaintiff "contributed the . . . $5,000 to the joint venture . . . [and] would be paid solely and wholly from the proceeds of construction money to be borrowed for the construction of a nursing home."

Defendant Ely, a maker and secretary of the corporate maker, also alleged the $5,000 was a capital contribution by plaintiff to the corporation and was to be repaid from "operating profits."

The inconsistencies emerging from the various defendants' versions of the operative facts are apparent. Some say the note is evidence that plaintiff made a capital "contribution" to a joint venture on the one hand, and on the other imply it represents a loan to a joint venture enterprise because it is to be repaid solely out of (a) operating profits, or (b) out of construction money when obtained. Still another says it is just what it purports to be—an agreement of the maker and seven accommodation signers to pay $5,000 to plaintiff on August 31, 1967.

Along with her motion for summary judgment plaintiff filed an affidavit saying "That during May, 1967, I agreed to loan Americare, Inc. $5,000.00 in exchange for a promissory note in that amount signed by . . . [the eight defendants]." This was after she had filed a reply containing a general denial.

We are not satisfied the appealing defendants have pleaded facts sufficient to bring them within the purview of the *Edwards-Spradlin* rule. More specifically, we do not think their answers allege the making of a definitive comprehensive oral agreement between plaintiff and the notemakers of which the note execution was but part performance.

Defendants do not argue any other potential defense, so having admitted execution of the note and its nonpayment, the absence of facts pleaded showing a valid defense in defendants' answers entitled plaintiff to the summary adjudication.

Burks v. American Nat'l Bank, 89 Okl. 62, 213 P. 301 (1923). The court therefore did not err in rendering the judgment below.

Affirmed.

BACON and NEPTUNE, JJ., concur.